1   VICTORIA K. HALL (SBN 240702)
    LAW OFFICE OF VICTORIA K. HALL
2   401 N. Washington St. Suite 550
    Rockville MD 20850
3   Victoria@vkhall-law.com
    Telephone: 301-738-7677
4   Facsimile: 240-536-9142

5   Attorney for Plaintiff
    ROBERT JACOBSEN

6

7

8

9

10              UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13  ROBERT JACOBSEN,                    )  No. C-06-1905-JSW
                                        )
14                       Plaintiff,     )  **MEMORANDUM IN OPPOSITION TO**
                                        )  **DEFENDANT RUSSELL MOTION TO**
15      v.                              )  **STRIKE CLAIMS 5 AND 7**
                                        )
16  MATTHEW KATZER, et al.,             )  Date:        August 11, 2006
                                        )  Time:        9:00 a.m.
17                       Defendants.    )  Courtroom:   2, 17th Floor
                                        )  Judge:       Hon. Jeffrey S. White
18                                      )
                                        )  Filed concurrently:
19                                      )     1.  Declaration of Robert Jacobsen
                                        )     2.  Declaration of Hans Tanner
20                                      )     3.  Proposed Order
    _____)

21

22

23

24

25

26

27

28

1          SUMMARY OF ARGUMENT

2          Filing a FOIA request is not a constitutionally protected activity, but a business transaction

3    that does not fall within the ambit of the Anti-SLAPP statute, Cal. Civ. P. § 425.16.  This statute

4    protects certain activities based on the constitutional right to petition and free speech, such as.

5    making statements at official government meetings, as well as making complaints or reports to

6    government agencies to prompt an investigation or remedy a harm.  But the statute does not give

7    protection to all communications with the government – only those based in the constitutional

8    petitioning or free speech right.  Bosley Medical Institute, Inc. v. Kremer, 403 F.3d 672 (9th Cir.

9    2005); City of Cotati v. Cashman, 29 Cal. 4th 69 (Cal. 2002).  Filing a FOIA request is neither a

10   complaint nor a report to prompt a government investigation or remedy a harm, but is a ministerial

11   act like a business transaction – money in exchange for copies and records, and thus, is

12   unprotected.  Furthermore, there is no constitutional right to non-public government information.

13   Thus, filing a FOIA request does not constitute a statement before an official proceeding.

14         The FOIA request is not a statement before a judicial proceeding because litigation

15   privilege does not apply here.  For litigation privilege to apply, four elements must be met:

16   proposed litigation, made in good faith, with litigation imminent, and the proposal made for the

17   purpose to resolve the dispute.  Mezetti v. State Farm Mutual Auto. Ins. Co., 346 F. Supp. 2d 1058

18   (N.D. Cal. 2004). Here, no litigation was proposed, and it was not imminent.  As discussed below,

19   the actions of Russell and Katzer could never seriously have been undertaken in the good faith

20   contemplate litigation.  Thus, Russell cannot raise litigation privilege to protect him from liability.

21         Even if the court finds that filing a FOIA request is a constitutionally protected activity, Mr.

22   Jacobsen has a probability of success on his  § 17200 claim.  Mr. Jacobsen lost money due to

23   Russell's unlawful, unfair or fraudulent business practices.  Thus, he has standing to bring the

24   action.  Immunity under Cal. Civ. §  1714.10 is not available to Russell since he violated an

25   independent duty he owed to Mr. Jacobsen.  As for a remedy, Mr. Jacobsen seeks injunctive relief,

26   and thus has a remedy available to him when he prevails.  Because filing a FOIA request is a

27   business transaction and not a constitutionally protected petitioning activity to redress harms, this

28   court should deny Defendant Russell's Motion to Strike Claims 5 and 7.

1

2

**Table of Contents**

3

I.    INTRODUCTION .............................................................................................. 1

II.   FACTS .............................................................................................................. 2

III.   ARGUMENT .................................................................................................... 5

   A.   Filing a FOIA request does not constitute making a statement before an official or judicial proceeding ................................................................................................ 6

      1.   What constitutes a protected activity under the anti-SLAPP Act ...................................... 6

      2.   The FOIA request is not a statement made before DOE because it would not have led to an investigation or remedy, but a production of documents ......................................... 7

      3.   The FOIA request was not made before a judicial proceeding because litigation privilege does not apply .............................................................................................. 9

   B.   Mr. Jacobsen has a probability of prevailing on his § 17200 claim .................................... 13

IV.   SUMMARY ...................................................................................................... 15

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>Table of Authorities</u>

2

**Cases**

A.F. Brown Elec. Contractor, Inc. v. Rhino Elec. Supply, Inc., 137 Cal. App. 4th 1118 (Ct. App.
3      2006)................................................................................................................................ 10

Amarel v. Connell, 102 F.3d 1494 (9th Cir. 1997) .......................................................................... 14
4
Blackburn v. Brady, 116 Cal. App. 4th 670 (Ct. App. 2004)........................................................... 7

Bosley Medical Institute, Inc. v. Kremer, 403 F.3d 672 (9th Cir. 2005) ...................................... 5, 7
5
Briggs v. Eden Council for Hope and Opportunity, 19 Cal.4th 1106 (1999)................................... 6

City of Cotati v. Cashman, 29 Cal. 4th 69 (Cal. 2002) .................................................................... 7
6
ComputerXpress, Inc. v. Jackson, 93 Cal. App. 4th 993 (Ct. App. 2001) ................................. 6, 13

Consolidated Aluminum Corp. v. Foseco Int'l Ltd., 910 F.2d 804 (Fed. Cir. 1990)...................... 10
7
Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, 47 Cal. App. 4th 777 (Ct. App. 1996) .............. 6

Edwards v. Centex Real Estate Corp., 53 Cal. App. 4th 15 (Ct. App. 1997).............................. 8, 10
8
Eisenberg v. Alameda Newspapers, Inc., 74 Cal. App. 4th 1359 (Ct. App. 1999) ........................ 10

Equilon Enters., LLC v. Consumer Cause, Inc., 29 Cal. 4th 53 (Cal. 2002) ................................ 13
9
Fontani v. Wells Fargo Investments, LLC, 129 Cal. App. 4th 719 (Ct. App. 2005) ........... 6, 8, 9, 13

Gil v. Bank of America, Nat'l Ass'n., 138 Cal. App. 4th 1371 (Ct. App. 2006)............................. 14
10
Kajima Eng'g & Construction, Inc. v. City of Los Angeles, 95 Cal.App.4th 921 (Ct. App. 2002) .. 6

Mann v. Quality Old Time Service, Inc., 120 Cal. App. 4th 90 (Ct. App. 2004) ........................... 13
11
McGehee v. Casey, 718 F.2d 1137 (D.C. Cir. 1983) ......................................................................... 8

Mezetti v. State Farm Mutual Auto. Ins. Co., 346 F. Supp. 2d 1058 (N.D. Cal. 2004).................. 10
12
Navellier v. Sletten, 29 Cal. 4th 82 (Cal. 2002) ............................................................................... 9

NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214 (1978) ........................................................ 8, 12
13
People ex rel. 20th Century Ins. Co. v. Building Permit Consultants, Inc., 86 Cal. App. 4th 280,
14      (Ct. App. 2000)................................................................................................................... 7

Visto Corporation v. Sproqit Techs., Inc., 360 F. Supp. 2d 1064 (N.D. Cal. 2005) ...................... 10
15
Wise v. Thrifty Payless, Inc., 83 Cal. App. 4th 1296 (Ct. App. 2000)............................................. 6

**Statutes**

Cal. Bus. & Prof. Code §  17200 ................................................................................. 2, 13, 14, 15
16
Cal. Civ. §  1714.10................................................................................................................... 2, 15

Cal. Civ. §  47(b) ....................................................................................................................... 2, 10
17
Cal. Civ. P.  §  425.16................................................................................................... 6, 7, 9, 13

**Regulations**
18
10 C.F.R. §  1004.1 ........................................................................................................................... 8

10 C.F.R. §  1004.2 ........................................................................................................................... 5
19
10 C.F.R. §  1004.4 ........................................................................................................................... 8

10 C.F.R. §  1004.9 ........................................................................................................................... 8
20
37 C.F.R. §  1.56............................................................................................................................... 4

37 C.F.R. §  1.56(b)........................................................................................................................... 1
21
37 C.F.R. §  1.56(c)(2) .................................................................................................................... 11

Manual of Patent Examining Procedure (MPEP) §  10.130(a) ...................................................... 11
22

23

24

25

26

27

28

**ISSUES TO BE DECIDED**

Is the filing of a FOIA request, in which there is a business transaction – mere exchange of information for a fee – an official proceeding when no First Amendment right to petition for redress of harms is triggered?

Does the litigation privilege apply when the parties who appeared to be threatening litigation knew they have no good faith and serious basis for bringing suit and the facts show suit was not imminent?

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

This is a case in which a so-called inventor, Defendant Matt Katzer ("Katzer"), stole ideas from others, patented them and then tried to crush competitors by attempting to enforce the patent. Katzer worked with an attorney, Defendant Kevin Russell ("Russell"), to prosecute his patent applications and trademark applications. Through Russell, Katzer has obtained 11 U.S. patents. From the very first patent application ('461 application) filed on June 24, 1998, Russell had in his possession 4 prior art references, each of which, inter alia, constituted a prima facie case of unpatentability.[1]  Russell never produced these references to the United States Patent and Trademark Office (USPTO).  Thus, he committed inequitable conduct, which made the patent and its related patents unenforceable.  In late 2002, manufacturers whom Russell sent threatening letters, confronted Russell with inequitable conduct charges, and more prior art.  During this same time frame, Russell had 2 applications open for prosecution on the merits, and was required by law to make the patent examiner aware of material references.  He failed to produce any of these or the earlier references.  In January 2006, Mr. Jacobsen filed a complaint with the Office of Enrollment and Discipline (OED) alleging that Russell engaged in inequitable conduct after Russell accused him of infringement, filed a FOIA request with Mr. Jacobsen's employer, and sent him numerous

---

[1] "A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability." 37 C.F.R. § 1.56(b).

1    letters styled as "bills" for patent royalties allegedly owed to Katzer.  During this January 2006

2    time period, Russell had an application open for prosecution on the merits that was a continuation

3    of the patents prosecuted during the late 2002 timeframe.  Despite owing a duty to disclose these

4    references, he still did not produce the prior art for the patent examiner.  Only when served with

5    this lawsuit did Russell finally produce some of the references to the USPTO.  On April 3, 2006,

6    when a 12th Katzer patent was on the verge of issuing, Russell filed a Request for Continued

7    Examination, citing as the reason for the request a violation of Rule 56 and the illegality of the

8    application.  This 12th application was a continuation of the '461 application from which the

9    patent-in-suit claims benefit.

10       Mr. Jacobsen has sued Russell for committing intentional torts, actual fraud, and unlawful

11   acts against him.  Russell seeks to strike these claims under the anti-SLAPP Act or defeat them by

12   raising privilege or immunity granted to attorneys by statute.  Because filing the FOIA request is

13   not a constitutionally protected activity, the court should deny Russell's motion.  Even if the court

14   agrees that the filing of the FOIA request is a protected activity, Mr. Jacobsen's Cal. Bus. & Prof.

15   Code § 17200 claim survives.  Russell cannot raise litigation privilege under Cal. Civ. § 47(b) and

16   immunity under Cal. Civ. § 1714.10 to protect him from liability for all intentional torts, fraud and

17   unlawful acts he committed against Mr. Jacobsen.

18   **II.    FACTS**

19       Throughout the 1990s, Katzer developed various products for KAM Industries, now called

20   KAMIND Associates, Inc.   These products included Train Tools, Train Server, Computer

21   Dispatcher, and Engine Commander.  Jacobsen Decl. ¶¶ 119-25.  Katzer advertised these products

22   for sale in Model Railroader magazine, beginning in 1995.  Jacobsen Decl. ¶¶ 92-94. Engine

23   Commander was advertised in the January 1995 issue of Model Railroader.  Jacobsen Decl. ¶ 92.

24   By December 18, 1996, Katzer was advertising that it would be available for shipment in January

25   1997, and would offer "[d]ual controller support on multiple serial ports (1-10) so that you can run

26   one controller on one port and another controller on another port."  Jacobsen Decl. ¶ 126.  This is

27   an embodiment of the invention.  Jacobsen Decl. ¶ 127.  Katzer also admitted on his website that

28   the products were available for sale beginning in 1996.  Jacobsen Decl. ¶ 127.  According to

Katzer, "Train Server is such an innovative and unique programming environment that that numerous patents (see footnotes … ) have been granted to KAM both [sic] in the United States, Germany, Great Britain, Canada and other countries."  <u>Id.</u>  The footnotes Katzer refers to include all 10 U.S. patents that had issued at the time, including '406, the patent that issued from the first application, and '329, the patent-in-suit.  <u>Id.</u>

On Jan. 14, 1998, Russell filed several trademark applications on behalf of Matt Katzer and Barbara Dawson.  Jacobsen Decl. ¶¶ 121-24.  Among them were "Train Server" and "Engine Commander".  The first use in commerce of "Train Server" was on or before June 1997, and of "Engine Commander" was on or before Jan. 1, 1993.  Jacobsen Decl. ¶¶ 121, 123.

On June 24, 1998, Russell filed the first in a series of patent applications on Katzer's behalf.  Jacobsen Decl. ¶ 102.  In this application, Russell identified in the Background of the Invention section of the patent a software program by DigiToys of Lawrenceville, Georgia.  <u>See</u> Tanner Decl. ¶¶ 18, 24.  The software program, WinLok, had a user's manual, but Russell did not list it on the Information Disclosure Sheet.  Tanner Decl. ¶¶ 5,8; <u>see</u> Jacobsen Decl. ¶ 108.  The user's manual discloses WinLok features that were claimed by Katzer in his first patent application.  Jacobsen Decl. ¶ 107.  In the application, Russell identified several KAM Industries programs including Train Server and Engine Commander, and stated copyrights for these programs as beginning in 1992.  Jacobsen Decl. ¶ 141.  Katzer had advertised these programs for sale beginning in 1996, and had discussed them and their capabilities in his presentations at National Model Railroad Association (NMRA) conferences.  Jacobsen Decl. ¶¶ 116-18, 128.  Engine Commander and Train Server each had capabilities that included the "invention" claimed in the first patent application.  Jacobsen Decl. ¶¶ 119, 126-27 .

In 2001, Bob Jacobsen and other model train enthusiasts began an open source project for a new model train control systems software.  <u>See</u> Jacobsen Decl. ¶ 9.  On March 27, 2002, JMRI posted a notice about changes that would appear in the next version of the software.  Jacobsen Decl. ¶ 62.  Among the capabilities were multiple programs running multiple trains at the same time on the same model train layout.  <u>Id.</u>  The release was posted and publicly announced on April 14, 2002.  <u>Id.</u>  The notice was sent to internet listservs, a type of internet based bulletin board, that

Matt Katzer belongs to.  Jacobsen Decl. ¶¶ 70-73. On April 17, 2002, Russell filed a continuation application (the '878 application) with claims that copied the capabilities in the new JMRI release. Jacobsen Decl. ¶¶ 67-69, 79.

On September 18, 2002, after several patents issued, Russell, acting on behalf of Matt Katzer, first filed a protective lawsuit and then sent a cease and desist letter to Mireille Tanner, wife of Hans Tanner.  Tanner Decl. ¶¶ 17-19; Jacobsen Decl. ¶ 109.  Hans and Mireille Tanner own DigiToys, the maker of the software program identified in the first, and all, patent applications.  Tanner Decl. ¶ 24.  Hans Tanner wrote Russell on Oct. 3, 2002, and deposited letters into the file wrappers of the three patents Katzer and Russell accused him of infringing.  Tanner Decl. ¶¶ 21, 33.  Dr. Tanner's letters stated that the accused capabilities of his program were present in versions of WinLok that pre-dated Katzer's earliest patent filing date, and that a user's manual included with WinLok 2.0 identified these capabilities.  Tanner Decl. ¶ 25.  Dr. Tanner also accused Katzer of violating 37 C.F.R. § 1.56.  Tanner Decl. Ex. F.  In December 2002, Russell dismissed the lawsuit against Tanner without serving him.  Jacobsen Decl. ¶ 109.

At the time Russell received the letter from Dr. Tanner, the '878 application was still open for prosecution on the merits.  Jacobsen Decl. ¶ 69.  Russell did not produce the references identified by Dr. Tanner to the patent examiner.  Id.  Prosecution on the merits closed on Nov. 4, 2002, and the '329 patent issued on Mar. 11, 2003.  Id.

Beginning in March 2005, Russell sent letters to Mr. Jacobsen accusing him of patent infringement.  Jacobsen Decl. ¶¶ 26-27.  In August 2005, Russell included "sale receipt" for more than $200,000.  Jacobsen Decl. ¶¶ 30-31.  Russell sent letters on a roughly monthly basis afterward, including invoices for more than $200,000 and with interest added.  Jacobsen Decl. ¶ 40. Then, in October 2004, Russell filed a FOIA request with the U.S. Department of Energy.  See Russell Ex. 4.  He accused Mr. Jacobsen of infringing KAMIND Associates patents.  Jacobsen Decl. ¶ 35.  Russell authorized the payment of up to $5,000 for copies of Mr. Jacobsen's e-mails, among other items.  Katzer Decl. Ex. 1.  The Department of Energy classified the request as a "commercial use" request, Katzer Decl. Ex. 1, which is a request by "one who seeks information for a use or purpose that furthers the commercial, trade, or profit interests of the requester or the

-4-

person on whose behalf the request is made." 10 C.F.R. § 1004.2. Mr. Jacobsen is a physics researcher at a prestigious research facility. Jacobsen Decl. ¶¶ 3, 5. He cannot use his mail at Lawrence Berkeley Lab (Lab) to infringe copyrights or patents. Jacobsen Decl. ¶¶ 47-48. If he does so, he can be fired. Jacobsen Decl. ¶ 49. Moreover, accusations of using another's work without giving that person credit destroy careers. Jacobsen Decl. ¶ 53. At UC Berkeley, where Mr. Jacobsen teaches, it is one of only two bases that can cause a tenured professor to be fired. Jacobsen Decl. ¶ 51. After the FOIA request was forwarded to the Lab, Mr. Jacobsen was called into his boss' office at the Lab and ordered to explain why Russell had filed the FOIA request. Jacobsen Decl. ¶ 39. The accusation embarrassed Mr. Jacobsen. Id. After Russell sent Plaintiff Robert Jacobsen numerous bills and harassing letters, and filed the FOIA request, Mr. Jacobsen filed the present action. Included is a claim for libel for making a false statement that Mr. Jacobsen is infringing an allegedly valid and enforceable patent. Given that Mr. Jacobsen is a researcher working in a field where he must give other people credit for their work or else face serious charges, Russell's statement constituted libel.

Subsequent to the FOIA request, Mr. Jacobsen filed a complaint with the USPTO Office of Enrollment and Discipline alleging inequitable conduct. As a direct result of this complaint, Russell filed an RCE on an open, continuation patent application on April 3, 2006.

## III.  ARGUMENT

The anti-SLAPP act covers constitutionally protected activity, such as filing of lawsuits, statements made at hearings, or reports to government agencies to prompt an investigation or remedy a harm. It does not protect all contacts or communications with the government. For a defendant to successfully strike a claim under the anti-SLAPP act, he must show that the claim is based on a constitutionally protected activity. Bosley Medical Institute, Inc. v. Kremer, 403 F.3d 672, 682 (9th Cir. 2005). If he cannot make a showing, his motion to strike fails. If he succeeds, then the burden shifts to the plaintiff to show he has a probability of succeeding. A.F. Brown Elec. Contractor, Inc. v. Rhino Elec. Supply, Inc., 137 Cal. App. 4th 1118, 1125 (Ct. App. 2006). Here, Russell claims that the FOIA filing is a statement made before an official proceeding authorized by law. He also claims that the FOIA filing was done in preparation for filing a lawsuit, and thus is

-5-

protected as a statement made before a judicial proceeding.  But as the facts and precedent will show, Russell's FOIA request does not constitute a protected activity under the anti-SLAPP Act because it is not based on the constitutional right to petition the government for redress of harms.

### A.   Filing a FOIA request does not constitute making a statement before an official or judicial proceeding

#### 1.   What constitutes a protected activity under the anti-SLAPP Act

The anti-SLAPP statute, Cal. Civ. P.  §  425.16, provides broad protection for some, but not all contacts, with the government.  Coverage is only for those acts that are based on constitutionally protected activities, as defined by the statute.  The statute makes a protected activity "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law….".  Cal. Civ. Code §  425.16(e)(1) . This protection is broad, and covers not only statements made before a hearing held by one of these bodies, but also statements made to these bodies to prompt an investigation or to seek a remedy.  See e.g., Briggs v. Eden Council for Hope & Opportunity, 19 Cal.4th 1106, 1115 (1999) (claim based on report to HUD and action in civil courts stricken);  Fontani v. Wells Fargo Investments, LLC, 129 Cal. App. 4th 719, 729-30 (Ct. App. 2005) (U-5 form required to be filed with NASD; one of its purposes is to "trigger a regulatory investigation where warranted", thus claim based on its filing was stricken);  ComputerXpress, Inc. v. Jackson, 93 Cal. App. 4th 993, 1009 (Ct. App. 2001) (claim based on complaint to SEC stricken);  Wise v. Thrifty Payless, Inc., 83 Cal. App. 4th 1296, 1301-02 (Ct. App. 2000) (report to DMV was made to trigger investigation; if claim based on report to DMV had been included, it would have been stricken);  Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, 47 Cal. App. 4th 777, 784 (Ct. App. 1996) (claim based on collection of information in preparation for report to Attorney General stricken due to litigation privilege; no question arose that litigation privilege applied).

But not all contacts or communications with the government are protected activities.  "No lawsuit is properly subject to a special motion to strike under section 425.16 unless its allegations arise from acts in furtherance of the right to petition or free speech."  Kajima Eng'g & Construction, Inc. v. City of Los Angeles, 95 Cal.App.4th 921, 924 (Ct. App. 2002).  "[T]he

critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech."  City of Cotati v. Cashman, 29 Cal. 4th 69, 78 (Cal. 2002).  A statement made to a government entity as a part of a ministerial act or business transaction is not a protected activity.  Blackburn v. Brady, 116 Cal. App. 4th 670, 676-78 (Ct. App. 2004).  Recent Ninth Circuit case law supports the view that a minor business transaction does not fall within the ambit of the anti-SLAPP Act.  Bosley Medical Institute, Inc. v. Kremer, 403 F.3d 672, 682 (9th Cir. 2005) (lawsuit based on domain name dispute does not involve First Amendment rights per se, thus anti-SLAPP does not apply).   The statute does not cover statements that have a remote chance of being used in litigation.  People ex rel. 20th Century Ins. Co. v. Building Permit Consultants, Inc., 86 Cal. App. 4th 280, 284-85 (Ct. App. 2000) (claim based on fraudulent statement made allegedly in anticipation of litigation not covered by statute).  "Hollow threats" of litigation, which are really tactical ploys to negotiate bargains, are not protected. Mezetti v. State Farm Mutual Auto. Ins. Co., 346 F. Supp. 2d 1058, 1065 (N.D. Cal. 2004).

Russell argues that the filing of the FOIA request is a statement made before an official proceeding – the Department of Energy (DOE).  He also argues that the FOIA request is a statement made before a judicial proceeding, as an act done in preparation for litigation.  The facts and the case law do not support him, and thus the court should deny his anti-SLAPP motion.

2.     The FOIA request is not a statement made before DOE because it would not have led to an investigation or remedy, but a production of documents

Russell's libelous statements are not statements made before an official proceeding, as that term is defined by the statute.  Rather these statements were made during the course of a business or commercial transaction.  Katzer offered to pay DOE $5,000 in exchange for information relating to Mr. Jacobsen's activities at the Lab.  Clearly, an offer of $5,000 in exchange for information is not the type of speech that §  425.16 was designed to protect.  By arguing that it does, Russell invites this Court to broaden the applicability of §  425.16 to include minor business transactions between a citizen and the government, a broadening not envisioned by the drafters of §  425.16 . The Court should not accept this invitation.

As noted above, protected activities are those based on the right to petition the government

-7-

for redress of harms, or the right to free speech.  Common to all cases cited by Russell where claims were stricken under the anti-SLAPP Act, are complaints made to the government, or investigations leading to complaints to be made to the government – protected "on the theory that open communications is a fundamental adjunct to the right of access to … proceedings." Edwards v. Centex Real Estate Corp., 53 Cal. App. 4th 15, 30 (Ct. App. 1997).  Even in Fontani, which should be considered the high water mark for protected activities, one purpose for the U-5 form in which defendant Wells Fargo used to report broker-dealer Fontani, was to trigger a regulatory investigation where warranted.  Fontani v. Wells Fargo Investments, LLC, 129 Ca. App. 4th 719, 729 (Ct. App. 2005).  The court used this as a basis for finding that the filing of that form was a protected activity.  Id. at 730.  Unlike these activities, which are protected under the right to petition the government for redress of harms, there is no constitutional right to a FOIA request. McGehee v. Casey, 718 F.2d 1137, 1147 (D.C. Cir. 1983) ("[C]itizens have no first amendment right of access to traditionally non-public government information.")  "The basic purpose of FOIA is to ensure an informed citizenry…."  NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978).  Further, the purpose of the FOIA is to get information, not to prompt an investigation.  10 C.F.R. § 1004.1 ("Records of the DOE made available pursuant to the requirements of 5 U.S.C. 552 shall be furnished to members of the public as prescribed by this part."); 10 C.F.R. § 1004.4 (describing elements of a request); 10 C.F.R. 1004.5 (describing procedure for processing requests); 10 C.F.R. § 1004.9 (describing fees for document search and production).  Thus, the FOIA request is not based on the right to petition for redress of harms.  The claim for libel is not based on a complaint to the U.S. Department of Energy or UC Berkeley to prompt an investigation because Russell never filed a complaint.  He filed a request for information.  Thus, the claim for libel cannot be based on a non-existent protected activity, and Russell's argument fails.

Russell argues that a FOIA request is a statement before an official meeting authorized by law and cites Fontani as support that because it was intended to "prompt action" by the Department of Energy.  For support, Russell includes a declaration from his client, Katzer, who conveniently states now – for the sole purpose of trying to bootstrap a protected activity to claim the benefit of the anti-SLAPP statute – that the filing was meant to warn the Department of Energy that it was

-8-

engaging in infringing activities.[2]  First, there is no "cease and desist" warning in the FOIA itself. Russell Decl. Ex. 4.  Next, aside from the fact that offering $5,000 to try to prompt official action smacks of attempted bribery, not all contacts or communications with the government are protected activities under the anti-SLAPP Act.  The FOIA request, which in essence is a business transaction – an exchange of money for documents, is not a protected activity.  Next, <u>Fontani</u> does not support Russell's assertion that the filing is a protected activity.  As noted above, in <u>Fontani</u>, the court held that because one of the purposes of the U-5 form, in which the allegedly defamatory statement was made, was to prompt action by the NASD to discipline broker-dealers, the filing of the U-5 form was a protected activity.  A review of the DOE Code of Federal Regulations section on FOIA shows that no government inquiry into the alleged infringement would have resulted from the FOIA request.  No remedy would have been given.  The only thing that would have resulted is a search for records, and a production of those records, in exchange for a payment of up to $5,000 – a business transaction.  Thus, because the statement was made neither at a government agency hearing, nor to the agency to prompt official action to investigate a complaint, or remedy a harm, the filing of a FOIA request is <u>not</u> a protected activity made before an official proceeding authorized by law.

3.   The FOIA request was not made before a judicial proceeding because litigation privilege does not apply

Russell's libelous statements were not made before a judicial proceeding as defined by statute and precedent, and accordingly are not protected.  Filing a lawsuit constitutes a protected activity under § 425.16.  <u>Navellier v. Sletten</u>, 29 Cal. 4th 82, 90 (Cal. 2002).  But Russell never filed a lawsuit against Mr. Jacobsen – although he lied in the FOIA request and said there was a lawsuit to scare Mr. Jacobsen. Russell Decl. Ex. 4.  Russell did file lawsuits against Freiwald Software and some of its distributors, and against Mireille Tanner, before sending them "cease and desist" letter, but not Mr. Jacobsen.  Activities in preparation for litigation are protected, but only

---

[2] This assertion is ridiculous. The Lawrence Berkeley Lab is a research facility, not a hotbed of model train control systems software production. Jacobsen Decl. ¶ 5. The discussion in § III.A.3 shows that Katzer knew that JMRI was a group of hobbyists and that it was not sponsored by an entity.

when done in serious and good faith contemplation of litigation.  <u>Mezetti v. State Farm Mutual</u> <u>Auto. Ins. Co.</u>, 346 F. Supp. 2d 1058 (N.D. Cal. 2004) (describing litigation privilege under Cal. Civ. § 47(b)).[3]  Four elements must be present for privilege to attach:

> First, "the communication must have been made preliminary to a proposed judicial or quasi-judicial proceeding."   Second, "the verbal proposal of litigation must be made in good faith." Third, "the contemplated litigation must be imminent." Fourth, "the litigation must be proposed in order to obtain access to the courts for the purpose of resolving the dispute."   The court noted that "[t]he critical point of each of these four elements is that the mere potential or 'bare possibility' that judicial proceedings 'might be instituted' in the future is insufficient to invoke the litigation privilege."

<u>Mezetti</u>, 346 F. Supp. 2d at 1065 (quoting <u>Edwards v. Centex Real Estate Corp.</u>, 53 Cal. App. 4th 15, 35 (Ct. App. 1997)) (citations omitted).  "In every case, the privileged communication must have some relation to an imminent lawsuit or judicial proceeding which is actually contemplated seriously and in good faith to resolve a dispute, and not simply as a tactical ploy to negotiate a bargain."  <u>Id.</u> (quoting <u>Edwards</u>, 53 Cal. App. 4th at 36) (emphasis in original).  "The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity when the possibility is not considered."  <u>Visto Corp. v. Sproqit Techs., Inc.</u>, 360 F. Supp. 2d 1064, 1069 n.3 (N.D. Cal. 2005).   Whether Russell's activities were taken in preparation of litigation is a question of fact to be resolved before privilege applies.  <u>Eisenberg v. Alameda</u> <u>Newspapers, Inc.</u>, 74 Cal. App. 4th 1359, 1379 (Ct. App. 1999).  Here, because of the 1-year delay, and Russell's admission of illegal conduct in prosecuting the patents,[4] Russell and Katzer – despite their threats – could not have seriously and in good faith contemplated litigation against Mr. Jacobsen.  Instead, their FOIA request was a "tactical ploy" unworthy of protection under litigation privilege.  Analysis of the facts demonstrates this.

First, the statement must be made preliminary to proposed litigation.  For 1 year, Russell sent letters accusing Mr. Jacobsen of infringement, but he never filed a lawsuit against Mr. Jacobsen, although he lied about it to the DOE.  Russell admits that the purpose of the letters to Mr.

---

[3] "[C]lauses (1) and (2) of section 425.16, subdivision (e) … are coextensive with the litigation privilege under Civil Code section 47(b)." <u>A.F. Brown Elec. Contractor, Inc. v. Rhino Elec.</u> <u>Supply, Inc.</u>, 137 Cal. App. 4th 1118, 1125 (Ct. App. 2006).

[4] E.g. <u>Consolidated Aluminum Corp. v. Foseco Int'l Ltd.</u>, 910 F.2d 804, 809 (Fed. Cir. 1990).

-10-

Jacobsen was to "engag[e] his attention to this manner [sic]."  Russell Decl. ¶ 7.  He said he "cautioned" Mr. Jacobsen, "suggest[ed] how the JMRI product may be modified", and "offer[ed] to license the patent" to Mr. Jacobsen.  Russell Decl. ¶ 4.  There was no proposed litigation.

Second, the proposal – if the court finds any – needs to have been made in good faith.  As noted, Russell knew from the very beginning that he and Katzer had committed inequitable conduct, and obtained patents that would have been barred under § 102(b).  At the time he filed the first patent application, Russell had in his possession four references – Engine Commander, Train Server, WinLok 1.5 and WinLok 2.0 – which each constituted a prima facie case of unpatentability.  He never produced them for the patent examiner, although he was under a duty to do so.  37 C.F.R. § 1.56(c)(2).  The consequences of not notifying the examiner could be severe, and include suspension or exclusion from practice before the USPTO.   Manual of Patent Examining Procedure (MPEP) § 10.130(a).  On two occasions, Russell was confronted with charges of inequitable conduct.  On both occasions, Russell had patent applications that were open for prosecution on the merits, one of which issued as the '329 patent-in-suit.  Russell still did not produce references.  A reasonable attorney would have known the consequences of filing a lawsuit – discipline and unenforceability of the patents due to inequitable conduct – and would have known he could <u>not</u> move forward with litigation.  With the sword of Damocles over his and Katzer's heads, Russell could not have been proposing litigation to Mr. Jacobsen in good faith.

Third, the contemplated litigation must be imminent.  The facts here show that litigation was not imminent.  Five months passed after the FOIA request was filed, and Russell did not file litigation.  He just continued to harass Jacobsen.  He could do little else because of the massive inequitable conduct and fraud on the USPTO that he and Katzer committed.

Finally, the litigation must be proposed in order to obtain access to the courts for the purpose of resolving the dispute.  Here it was not.  As demonstrated by the exhibits, any litigation brought by defendants would never ended in their favor, and they knew it.  If any litigation was proposed, it was a mere tactical ploy to get Mr. Jacobsen to shut down his project and hand over more than $200,000 to Katzer.

Russell argues that the filing of the FOIA request was done in anticipation of litigation and

-11-

sent to the DOE to warn the DOE of its infringing activities.  As noted earlier, there was no "cease and desist" warning in the FOIA.  Further, "… FOIA was not intended to function as a private discovery tool."  <u>NLRB v. Robbins Tire & Rubber Co.</u>, 437 U.S. 214, 242 (1978). Katzer states – apparently with a straight face – that he believed that the U.S. Department of Energy was sponsoring the JMRI project.  Katzer Decl. ¶ 3.  This is simply not the case.[5]  In the world of model train control systems, there are few players and they all know each other or know of each other.  Jacobsen Decl. ¶ 16.  Katzer and Jacobsen have known each other since 2001 when Mr. Jacobsen first contacted Katzer about control systems for model trains.  Jacobsen Decl. ¶¶ 14, 17. Katzer knew it was a fellow hobbyist creating the software.  Jacobsen Decl. ¶¶ 14-22.  He knows that other people working on the JMRI project are fellow hobbyists.  Jacobsen Decl. ¶ 25.  Katzer attended the same NMRA conferences that Jacobsen did.  Jacobsen Decl. ¶ 17.  Katzer gave presentations and workshops on his software at these conferences.  Jacobsen Decl. ¶ 18.  Jacobsen did the same for JMRI.  Jacobsen Decl. ¶ 19.   Katzer occasionally attended JMRI presentations. <u>See</u> Jacobsen Decl. ¶ 20.  Never once at any presentation did Jacobsen or anyone else associated with the project state or infer that DOE was sponsoring the project.  Jacobsen Decl. ¶¶ 21-22; Tanner Decl. ¶¶ 37-43. Thus, Katzer's reason for sending the FOIA is a lie, and the truth emerges - - Katzer and Russell used the FOIA to further their admittedly illegal conduct and to harass of Mr. Jacobsen.  Clearly, based upon Katzer's admission of illegal conduct via Russell to the USPTO their threats were not made in serious and good faith contemplation of litigation.  Thus, their actions are not statements made before a judicial proceeding, and their activities are not protected under the anti-SLAPP act.

---

[5] He also states that he "had no knowledge of Mr. Jacobsen's employment status, either with the DOE or any other employer." Katzer Decl. ¶ 6.  But in Paragraph 4.d of his declaration, Katzer states "I determined that the lbl.gov email address was associated with the DOE."  Furthermore, by going to the www.lbl.gov address, and selecting "Scientific Programs" on the web page, one will find approximately 25 National User Facilities and Scientific Divisions – one of which is the Physics Division.  Mr. Jacobsen's association with LBL is not apparent from the website.  One needs to perform a search to determine that Mr. Jacobsen works at the Physics Division.  While Katzer states that he had no knowledge of Mr. Jacobsen's status, the truth is that Katzer knew enough about Mr. Jacobsen's employment to target the FOIA request directly to the "Physics Division Berkley [sic] Livermore Labs", where Mr. Jacobsen worked.  Katzer Decl. Ex. 1.

**B.     Mr. Jacobsen has a probability of prevailing on his § 17200 claim**

The facts as they presently exist show that Russell and Katzer engaged in a number of illegal and unlawful acts[6] such that Mr. Jacobsen has a probability of prevailing on his § 17200 claim.  If a defendant can succeed at showing his activity falls within § 425.16's ambit, then the burden shifts to the plaintiff to show that he has a probability of prevailing on the merits.  Equilon Enters., LLC v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (Cal. 2002).  The court considers the pleadings and the declarations of both parties.  Id.   If the court believes that Russell's actions constitute a protected activity under § 425.16, then Mr. Jacobsen concedes that he will not prevail on his libel claim.  E.g., Fontani v. Wells Fargo Investments, LLC, 129 Cal. App. 4th 719, 729-30 (Ct. App. 2005); ComputerXpress, Inc. v. Jackson, 93 Cal. App. 4th 993, 1009 (Ct. App. 2001).  However, libel is only one part of Mr. Jacobsen's § 17200 claim, and he is able to make a showing that he will prevail on his § 17200 claim.  "Where a cause of action refers to both protected and unprotected activity and a plaintiff can show a probability of prevailing on any part of its claim, the cause of action is not meritless and will not be subject to the anti-SLAPP procedure."  Mann v. Quality Old Time Service, Inc., 120 Cal. App. 4th 90, 106 (Ct. App. 2004).

California Business & Professions Code 17200 et seq. prohibits unlawful, unfair or fraudulent business activities.  A plaintiff who has suffered injury in fact and lost money or property can bring an action under § 17200 for injunctive relief.  Id. § 17204.  Here, due to Russell's actual fraud and unlawful conduct, Mr. Jacobsen lost earnings, and hence was damaged.  Complaint ¶ 96.h; Jacobsen Decl. ¶ 46.  Thus, Mr. Jacobsen has standing to bring a § 17200 claim.  To prevail under § 17200, Mr. Jacobsen must show that Russell engaged in an unlawful, unfair or fraudulent business practice.  Mr. Jacobsen can make this showing.

Russell committed actual fraud against Mr. Jacobsen.  Actual fraud in California consists of: (1) a misrepresentation, (2) knowledge of its falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damages.  Gil v. Bank of America, Nat'l Ass'n., 138 Cal. App. 4th 1371,

---

[6]  During discovery we intend to vigorously pursue additional facts from Russell regarding, among others things, the how, when and where relating to Russell's learning of and subsequent admission of illegal conduct on the part of his client, Katzer.

1   1381 (Ct. App. 2006).   The patents are unenforceable.   Russell knew, because of his and his

2   client's inequitable conduct, that the Katzer patents were unenforceable.   Russell sought to obtain

3   money for patents that are unenforceable, and thus he intended to defraud Mr. Jacobsen.   Mr.

4   Jacobsen, concerned about the repeated harassment, had to investigate Russell's assertions.   Mr.

5   Jacobsen lost income because of Russell's continued insistence that the Katzer patents were valid

6   and enforceable.   Jacobsen Decl. ¶ 46. All elements are met.   Thus, this claim stands.

7          Russell committed a crime against Mr. Jacobsen when he sent the invoices to him.   Under

8   Cal. Civ. § 1716, it is punishable by a fine and jail time to send a person an invoice when it is a

9   solicitation for an order, unless the invoice meets certain statutory requirements.   Cal. Civ. §

10  1716(a) ("It is unlawful for a person to solicit payment of money by another by means of a written

11  statement or invoice, or any writing that reasonably could be considered a bill, invoice, or

12  statement of account due, but is in fact a solicitation for an order….").   Russell sent an invoice for

13  $203,000 on Aug. 24, 2005.  Russell Decl. Ex. 3.  He called it an "invoice". Russell Decl. ¶ 7.  He

14  sent another invoice on Oct. 24, 2005 for $206,047.96.   He attempted to send another letter on

15  November 23, 2005 with an invoice.   On Jan. 3, 2006, he sent another letter with an invoice for

16  $209,382.74.  Russell admits in his declaration that the invoice he sent was in reality a request for

17  royalty payments.  Russell Decl. ¶ 6.  Thus, the invoice that Russell sent was in fact a solicitation

18  for an order.  Thus, Russell violated Cal. Civ. § 1716, and Mr. Jacbosen's § 17200 claim stands.

19         Russell committed antitrust violations.  Under usual circumstances, an attorney will not be

20  liable for antitrust violations.  But "an attorney is not immune from antitrust liability if he becomes

21  an active participant in formulating policy decisions with his client to restrain competition."

22  Amarel v. Connell, 102 F.3d 1494, 1522 (9th Cir. 1997) (citation omitted).   Although Russell

23  argues that he was merely an adviser, in truth he was involved from the very start.  With 4 material

24  references, each of which provided a prima facie case of unpatentability, in front of him, Russell

25  repeatedly violated the law and ethics rules for years, looked the other way and sought patents for

26  Katzer – 11 of them.  Knowing the patents were unenforceable and likely invalid, Russell engaged

27  in a pattern of enforcement against competitors to shut them down or force them to pay royalties –

28  royalties which he knew Katzer was never entitled to.  Thus, he was part of the policy decision at

-14-

1   KAM Industries to violate antitrust laws.  On this basis, Mr. Jacobsen's § 17200 claim stands.

2          Russell argues that Mr. Jacobsen cannot prevail because Russell's actions constitute a

3   conspiracy for which Russell may raise an immunity under Cal. Civ. § 1714.10.  Russell states that

4   Mr. Jacobsen was required to seek a court order to file a lawsuit against Russell.  Russell states that

5   he did not commit an "obvious" tort against Mr. Jacobsen, which would make it unnecessary to

6   follow the procedural requirements of the statute.  While familiar with an intentional or negligence

7   tort, neither Mr. Jacobsen, nor his counsel, are familiar with what constitutes an "obvious" tort.

8   Exceptions to the statute include violation of an independent duty owed to the plaintiff, Mr.

9   Jacobsen.  Cal. Civ. § 1714.10(c)(1) .  Those include intentional torts, fraud and certain unlawful

10  acts.  See Pavicich v. Santucci, 85 Cal. App. 4th 382, 395 (Ct. App. 2000).  The facts show that

11  Russell committed intentional torts, fraud and unlawful acts for which he may not seek the

12  protection of Cal. Civ. § 1714.10.  Thus, Mr. Jacobsen will prevail on his § 17200 claim.

13  **IV.     SUMMARY**

14         Filing a FOIA request is not a constitutionally protected activity because it invokes no

15  petitioning or free speech right.  Russell cannot invoke litigation privilege because litigation was

16  not imminent, nor was it contemplated in seriousness or good faith.  Even if this Court finds that

17  filing a FOIA request is a protected activity or that Russell can invoke litigation privilege, Mr.

18  Jacobsen can prevail on his § 17200 claim.  Like all people, Russell has an independent duty to

19  Mr. Jacobsen not to commit unlawful, unfair and fraudulent acts.  Thus, Russell cannot rely on §

20  1714.10 for immunity, and there is no need to file a verified petition or complaint before naming

21  him.  Defendant Russell's Motion to Strike Claims 5 and 7 should be denied.

22

23  DATED:  June 9, 2006                    By _____/s/_____
                                               Victoria K. Hall, Esq. (SBN.240702)
24                                             LAW OFFICE OF VICTORIA K. HALL
                                               401 N. Washington St. Suite 550
25                                             Rockville MD 20850

26                                             Telephone:      301-738-7677
                                               Facsimile:      240-536-9142
27
                                               ATTORNEY FOR PLAINTIFF
28

-15-