R. Scott Jerger (*pro hac vice*)
Field & Jerger, LLP
610 SW Alder Street, Suite 910
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276
Email: scott@fieldjerger.com

John C. Gorman (CA State Bar #91515)
Gorman & Miller, P.C.
210 N 4th Street, Suite 200
San Jose, CA 95112
Tel: (408) 297-2222
Fax: (408) 297-2224
Email: jgorman@gormanmiller.com

Attorneys for Defendants
Matthew Katzer and Kamind Associates, Inc.

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT JACOBSEN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>MATTHEW KATZER, an individual, KAMIND ASSOCIATES, INC., an Oregon corporation dba KAM Industries, and KEVIN RUSSELL, an individual,<br><br>Defendants. | Case Number C06-1905-JSW<br><br>Hearing Date: August 11, 2006<br>Hearing Time: 9:00am<br>Place: Ct. 2, Floor 17<br><br>Hon. Jeffrey S. White<br><br>DEFENDANTS MATTHEW KATZER AND KAMIND ASSOCIATES, INC.'S MEMORANDUM IN REPLY IN SUPPORT OF DEFENDANTS MATTHEW KATZER AND KAMIND ASSOCIATES INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED AND FOR LACK OF SUBJECT MATTER JURISDICTION AND MOTION TO BIFURCATE AND STAY |

Case Number C 06 1905 JSW
Reply Memorandum in Support of Defendants Matthew Katzer and Kamind Associates, Inc.'s motion to dismiss for failure to state a claim on which relief can be granted and for lack of subject matter jurisdiction and motion to bifurcate and stay

**SUMMARY OF ARGUMENT**

Jacobsen's alleged injury, loss of consulting income as a research scientist, is not a cognizable "antitrust injury" as defined by applicable case law.  Jacobsen has failed to allege an injury in the market where competition is allegedly being restrained.  Jacobsen has also failed to allege a stifling of competition in the market, and, in fact, alleges that he prevented any injury from occurring in the model train software market.  Finally, Jacobsen's loss of consulting income is not proximately related to the alleged misconduct.  To demonstrate "antitrust injury" Jacobsen must allege facts demonstrating these requirements.  *See e.g. Ass'n of Wash. Pub. Hosp. Dists. v. Phillip Morris, Inc.*, 241 F.3d 696, 704 (9th 2001),  *Unitherm Food Sys., Inc. v. Swift Eckrich, Inc.*, 375 F.3d 1341, 1361 (Fed. Cir. 2004), *Association of General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519 (1983).

Additionally, given the fact that the United States Patent and Trademark Office has recently issued a "Notice of Allowance" on U.S. Patent Serial Number 10/989,815 (the very patent referred to by Jacobsen as proof of "illegal conduct"), Jacobsen cannot allege facts demonstrating that the USPTO has been "defrauded" by deliberate omissions and representations.  Therefore, Jacobsen has failed to state a claim for fraud.

Jacobsen has also failed to state a claim for a Sherman Act § 2 violation.  Jacobsen cannot allege facts demonstrating that KAM and Katzer have a dangerous probability of achieving monopoly power because the only potential for a monopoly stated in the complaint is the potential that will be realized if KAM and Katzer prevail in this patent validity suit, at which time KAM and Katzer are immune from antitrust liability.  *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1141, 1418 and n.16. (Fed. Cir. 1987).

**STATEMENT OF FACTS**

The following relevant facts have occurred since this motion was filed.  Subsequent to the filing of this lawsuit, KAM and Katzer filed papers with the U.S. Patent and Trademark Office ("USPTO") requesting to withdraw U. S. Patent Application Serial Number 10/989,815

from issue and for continued examination, together with an information disclosure statement attaching a copy of Jacobsen's complaint.  Jacobsen Decl., Exh. U.  The USPTO regulations require this filing when the subject matter in a pending patent application is involved in litigation.

Pending U.S. Patent Application Serial Number 10/989,815 is referred to by plaintiff as proof of KAM and Katzer's "admission of illegal conduct" and, according to plaintiff, is related to U.S. Patent No. 6,530,329 which is one of the patents at issue in this litigation.  Jacobsen Decl. ¶¶ 82-85, Complaint, page 6, footnote 1.

On June 14, 2006, the USPTO mailed a Notice of Allowance of U.S. Patent Application Serial Number 10/989,815 after the examiner clearly reviewed and considered the claims in Jacobsen's complaint.  Defendant Kevin Russell filed a request for judicial notice of this Request for Judicial Notice of Actions by U.S. Patent Office in Support of Special Motion to Strike Plaintiff's Claims against Kevin Russell under Cal. Civ. Proc. Code § 425.16 (hereinafter "Request for Judicial Notice") (Docket #61), Exhibits 6, 7, 8.

An information disclosure statement together with Jacobsen's complaint was filed  with the USPTO in two other pending patent applications related to model train control systems invented by Matthew Katzer, one of which is U.S. Patent Application Serial Number 10/976,227.

On June 8, 2006, the USPTO mailed a Notice of Allowance of U.S. Patent Application Number 10/976,227 stating that Jacobsen's complaint provides "no further evidence that would suggest an unfavorable ruling for the claims in the instant application."  Request for Judicial Notice, Exh. 2.

## ARGUMENT

As a threshold matter, Jacobsen questions whether Katzer and KAM's motion to dismiss Count 4 (violations of § 2 of the Sherman Act) of the complaint for lack of antitrust standing under the Clayton Act is more properly a motion to dismiss under Fed. R. Civ. P. 12(b)(6) as opposed to Fed. R. Civ. P. 12(b)(1).  Failure to establish an injury to "business or property" is

Case Number C 06 1905 JSW
Reply Memorandum in Support of Defendants Matthew Katzer and Kamind Associates, Inc.'s motion to dismiss for failure to state a claim on which relief can be granted and for lack of subject matter jurisdiction and motion to bifurcate and stay

2

properly brought under Fed. R. Civ. P. 12(b)(1), generally.  *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3rd Cir. 2000).  However, courts have recognized uncertainty as to whether such a motion to dismiss is predicated on Rule 12(b)(1) or (b)(6).  *Id.*  In this case it is a distinction without a difference as Katzer and KAM do not introduce evidence outside of the pleadings for the Court's consideration in relation to this motion, the only advantage to proceeding under Fed. R. Civ. P. 12(b)(1) as opposed to Fed. R. Civ. P. 12(b)(6).  *See In re Nifedipine Antitrust Litigation*, 335 F. Supp. 2d 6, 16 (D.C. Cir. 2004).

Additionally,  Katzer and KAM have also predicated their motion to dismiss Count 4 for failure to demonstrate an "antitrust injury" on Rule 12(b)(6).  *See* Memorandum in Support of Katzer and KAM's Motion to Dismiss, Section B, page 7-10.

### A.  Jacobsen has failed to state a claim for fraud

Jacobsen conclusorily alleges that KAM and Katzer are liable for the fraudulent procurement and enforcement of a patent.  Memorandum in Opposition to Defendants Katzer and KAM's Motion to Dismiss (hereinafter "Memorandum in Opposition"), 11:7.  This allegation is made in an effort to strip KAM and Katzer of antitrust immunity.  *Unitherm Food Sys. V. Swift-Eckrich, Inc.* 375 F.3d 1341, 1362 (Fed. Cir. 2004).

In *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172 (1965), the Supreme Court held that in order to strip a patentee of its exemption from antitrust laws, the antitrust plaintiff is required to prove that the patentee obtained the patent by "knowingly and willfully misrepresenting the facts" to the Patent Office.  *Walker Process*, 382 U.S. at 177. Fraud must be alleged in conformance with Federal Rule of Civil Procedure 9(b) which requires, in the context of a patent action:  (1) a false representation, (2) made with the intent to deceive the patent examiner, (3) on which the examiner justifiably relied in granting the patent, and (4) but for which representation or deliberate omission the patent would not have been granted.  *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364 (Fed. Cir. 1998).  In order to state facts showing

that the alleged fraud was "knowing" and "willful," Jacobsen must allege more than inequitable conduct. *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1069 (Fed. Cir. 1998).

Jacobsen's basis for his claim of fraud is his assertion that KAM and Katzer withheld information from the patent office. Complaint ¶¶ 14-36. Other than Jacobsen's own opinion and those of his friends, Jacobsen cites no facts or authority-- and provides no claim analysis-- supporting the proposition that KAM and Katzer defrauded the patent office.

As discussed *supra*, subsequent to the filing of this lawsuit, the USPTO has sent a "Notice of Allowance" on U.S. Patent Application Serial Number 10/989,815, the very patent referred to by Jacobsen as proof of "illegal activity" in his declaration at ¶¶ 82-85. Request for Judicial Notice, Exhibit 6, 7, 8 (Docket #61). Exhibit 8 to the Request for Judicial Notice shows clearly that this patent is allowable after a second patent examiner reviewed Jacobsen's complaint, as indicated by the examiner's initials YB and signature /Yonel Beaulieu/ (6/09/06).

Given the actions of the USPTO subsequent to the filing of this lawsuit, Jacobsen cannot make out a *prima facie* case of fraud against KAM or Katzer. The patent examiner has been made aware of and has reviewed the allegedly "false information" detailed in the complaint and has concluded that this patent is allowable. Implicit in the USPTO's decision is the premise that there were no representations or deliberate omissions that have "defrauded" the USPTO. Therefore, Jacobsen has failed to state a claim for *Walker Process* fraud.

**B.      Jacobsen has not suffered "antitrust injury" and therefore does not have standing to bring a Sherman Act claim**

Jacobsen's alleged loss of an undisclosed amount of "consulting" income as a result of spending time "vindicating the economic freedom of others" (Memorandum in Opposition at 6:8) is not a cognizable "antitrust injury" as defined by applicable case law. The case law cited by Jacobsen is factually distinguishable to the point of being inapposite.

As both plaintiff and defendants have already noted, an antitrust injury is a threshold requirement for antitrust standing under both Clayton Act §§ 4 and 16. *Cargill, Inc. v. Monfort*

Case Number C 06 1905 JSW
Reply Memorandum in Support of Defendants Matthew Katzer and Kamind Associates, Inc.'s motion to dismiss for failure to state a claim on which relief can be granted and for lack of subject matter jurisdiction and motion to bifurcate and stay

4

*of Colorado, Inc.*, 479 U.S. 104, 113 (1986).  An "antitrust injury" consists of (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent. *Id.* at 1055 *(citing Brunswick Corp*. 429 U.S. at 489).  In regard to the final factor, Ninth Circuit case law requires that Jacobson suffer his injury in the market where competition is allegedly being restrained.  *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.*, 241 F.3d 696, 704 (9th Cir. 2001) (quoting *American Ad Management Inc., v. General Tel. Co.,* 190 F.3d 1051, 1057 (9th 1999)); *Legal Econ. Evaluations, Inc. v Met. Life Ins. Co*, 39 F.3d 951 (9th Cir. 1994). Jacobsen's alleged injury (i.e. lost academic consulting income) is not "antitrust injury" for three reasons.

First, Jacobsen has failed to allege an injury in the relevant market.  Lost income in a field unrelated to the relevant market (as Jacobsen concedes in the Memorandum in Opposition at 7:11) in which the alleged anticompetitive conduct exists is not the type of injury the antitrust laws were designed to protect.  *Vinci v. Waste Mgmt.*, 80 F.3d 1372, 1376 (9th Cir. 1996) ("The loss of a job is not the type of injury that the antitrust laws were designed to prevent"); *Legal Economic Evaluation, Inc. v. Metropolitan Life Insurance Co.*, 39 F.3d 951, 956 (9th Cir. 1994) (plaintiff in consulting market lacked antitrust injury because harm took place in different market);  *Ass'n of Wash. Pub. Hosp. Dists*  at 704-705 ("The requirement that the alleged injury be related to anti-competitive behavior requires, as a corollary, that the injured party be a participant in the same market as the alleged malefactors… [and] that the plaintiff […] suffered its injury in the market where competition is being restrained.  Parties whose injuries, though flowing through that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury.").  Jacobsen must allege more than a purely personal economic injury that does not adversely effect competition in the relevant market.  *Les Shockley Racing, Inc., v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th 1989).  Although Jacobsen may participate in the model train market as a hobbyist, any claimed loss of consulting income that has to him *qua* research scientist is outside the relevant model train market.

Second, Jacobsen has failed to allege that KAM and Katzer's alleged misconduct stifled competition in the relevant market.  The antitrust laws were enacted for the protection of competition, not competitors.  *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962). Jacobsen must allege facts demonstrating "injury to the market or to competition in general, not merely injury to individuals or individual firms."  *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 812 (9th 1988) (also stating at 812-813:  "it is the impact upon competitive conditions in a definable market which distinguishes the anti-trust violation from the ordinary business tort. [The] failure to allege injury to competition is a proper ground for dismissal by judgment on the pleadings").  Jacobsen has failed to allege that the alleged misconduct stifled competition or injured the relevant market.  *Unitherm Food Sys., Inc. v. Swift Eckrich, Inc*. 375 F3d 1341, 1361 (Fed. Cir. 2004), *rev'd on other grounds* by *Unitherm Food Sys., Inc., v. Swift Eckrich, Inc.*, 126 S.Ct. 980, (2006).  Jacobsen has not only failed to allege any injury to the market or stifling of competition, but indeed claims that he has prevented any injury from occurring in the market. Memorandum in Opposition 7:11.

Finally, Jacobsen's alleged injury is not proximately related to the alleged misconduct. Contrary to plaintiff's assertions, Jacobsen's alleged loss of income is clearly not "inextricably intertwined" and an "integral part" of the defendants' alleged misconduct.  In fact, there is no direct link between the alleged misconduct and the claimed damages as Jacobsen willingly chose to forego any additional consulting income to pursue his hobby.  The proximate cause factors set forth by the Ninth Circuit do not accord standing to Jacobsen:  (1) the directness of the injury, (2) the speculative nature of the harm, and (3) the risk of duplicative recovery and complexity of apportioning damages.  *Ass'n of Wash. Pub. Hosp. Dists* at 703 citing *Association of General Contractors of California, Inc.* and *Holmes v. Sec. Investor Prot. Corp.*, 503, US. 258 (1992).

While Jacobsen is a model train hobbyist, he concedes that any injury he suffered did not occur in this capacity.  Memorandum in Opposition, 7:11.  To determine the directness of the injury, courts look to the claimed chain of causation between the injury and the alleged restraint

of trade. *American Ad Management Inc.,* at 1058. As Jacobsen concedes, his alleged injury is completely divorced from the model train market.

As Circuit Judge Kennedy stated in his dissent in *Ostrofe v. H.S. Crocker Co., Inc*., 740 F.2d 739 (9th Cir. 1984):

> Antitrust enforcement becomes divorced from antitrust policy when treble damages bear no relation to anticompetitive effects of the illegal conduct.  Such awards threaten to make every business tort convertible into a treble-damage bonanza. The antitrust laws were not intended as a balm for all wrongdoing in the business community.  They were designed to promote free competition.  That clear focus is lost when courts allow treble damages to plaintiffs who show no injury related to the breakdown of competitive conditions in the market place.

*Ostrofe* 750 at (*citing Associated General*, 459 U.S. at 545.)

Jacobsen's flagship cases cited in his Memorandum in Opposition in support of his proposition that he has suffered "antitrust injury," *Ostrofe v. H.S. Crocker Co., Inc*., 740 F.2d 739 (9th Cir. 1984) and *Blue Shield of VA v. McCready*, 457 US 465 (1982), are sufficiently factually distinguishable to be wholly inapposite to the case at bar.

*Ostrofe*, which recognized a limited exception to the general rule that only competitors and consumers have antitrust standing under the Clayton Act, has been limited to the narrow facts of the case. *Vinci v. Waste Mgmt.*, 80 F.3d 1372, 1376 (9th Cir. 1996) ("The exception recognized in *Ostrofe II* is limited to those cases in which a dismissed employee is an "essential participant" in an antitrust scheme, the dismissal is a "necessary means" to accomplish the scheme, and the employee has the greatest incentive to challenge the antitrust violation").  The plaintiff's injury in *Ostrofe* stemmed from the defendant's firing and subsequent blacklisting of the defendant from the industry based on the plaintiff's refusal to participate in an anticompetitive scheme between the defendant and co-conspirators.  *Ostrofe* at 742.  The court focused on the plaintiff's status as a sales manager and employee of the defendant in determining that he was a "direct and necessary participant in the conspiracy" to find that his injury was sufficiently intertwined with the anticompetitive conduct to constitute an antitrust injury. *Ostrofe* at 746.  Because Jacobsen is neither KAM's dismissed employee nor a direct and

necessary participant in any alleged anticompetitive conduct by KAM, Jacobsen's lost income is not inextricably intertwined with or an integral part of the alleged anticompetitive scheme.

Likewise, *McCready* is inapposite to the allegations in Jacobsen's complaint.  The plaintiff in *McCready* was a subscriber to a group health plan and claimed that the defendant engaged in a conspiracy to deny claims submitted for treatment by psychologists while reimbursing claims for treatment by psychiatrists.  *McCready* at 468.  The Supreme Court held that the plaintiff, as a <u>customer</u>, had standing to sue:  "As a consumer of psychotherapy services entitled to benefits under the Blue Shield Plan, we think it's clear that McCready was within that area of the economy . . . endangered by [that] breakdown of competitive conditions."  *McCready*, at 480 (internal quotation marks and citation omitted).  Jacobsen does not allege that he is a customer of KAM's.

Based on the above, Jacobsen has failed to allege "antitrust injury" sufficient to allow him to maintain an antitrust claim against KAM and Katzer and therefore Count 4 of the Complaint should be dismissed without leave to amend.

### C.      Jacobsen has not alleged facts demonstrating that KAM and Katzer have a dangerous probability of achieving monopoly power

Jacobsen's Memorandum in Opposition fails to grasp the thrust of KAM and Katzer's argument in regard to attempted monopolization under Section 2 of the Sherman Act.  As discussed in KAM and Katzer's Motion to Dismiss, Jacobsen must allege facts demonstrating that KAM and Katzer have a "dangerous probability of achieving monopoly power" to state a claim for attempted monopolization.  *Cost Mgmt. Servs. v. Washington Natural Gas Co.*, 99 F.3d 937, 949-950 (9th Cir. 1996).  Monopoly power is the "power to control prices or exclude competition."  *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966).

In his complaint, Jacobsen alleges that "if valid and enforceable, the patents would dominate the relevant market."  Complaint, ¶ 87.  These assertions of market power and monopoly power are logically flawed.  One the one hand, they depend on the assertion that KAM

and Katzer's patents were fraudulently procured and thus invalid.  On the other hand, Jacobsen

posits that the patents would dominate the market if, and only if, they are valid and enforceable.

Memorandum in Opposition, 10:7.  As a matter of law, enforcement of a valid patent cannot and

does not violate antitrust law.  Jacobsen has thus failed to allege any facts showing a dangerous

probability of success because the only potential for monopoly stated in the complaint is the

potential that will be realized if KAM and Katzer prevail in this patent enforceability suit.  *FMC

Corp. v. Manitowoc Corp*., 835 F.2d 1411, 1418 and n. 16 (Fed. Cir. 1987).  Therefore, Jacobsen

has failed to state a claim under Section 2 of the Sherman Act and Count 4 of the complaint

should be dismissed without leave to amend.

       **D.**       **Jacobsen has failed to state a claim for libel**

An essential element of libel is that the publication must contain a false statement of fact.

*Okun v. Superior Court*, 29 Cal. 3d. 442, 450 (1981).  Patent law is complicated and reasonable

people may differ as to whether a patent was or was not infringed.  This is demonstrated by the

fact that the USPTO has reviewed one of the patents referred to by plaintiff as proof of  this

patent's invalidity in his declaration at ¶¶ 82-85 (No. 10/989,815) and determined that the patent

is allowable.  Request for Judicial Notice, Exhibits 6, 7, 8 (Docket #61).  Therefore, it is

reasonable to conclude that JMRI is infringing a valid and enforceable KAM and Katzer's patent

and this statement is not a false statement of fact nor libelous.

In response to Jacobsen's footnote 3 in his Memorandum in Opposition, KAM and

Katzer intended to incorporate only the legal arguments relating to the FOIA request as a

privileged communication and not any factual allegations in Katzer's declaration in an effort to

avoid repetitive arguments before this Court.  To further avoid repetition, the undersigned

respectfully refers this court to the legal arguments contained in KAM and Katzer's

Memorandum in Reply to Jacobsen's Memorandum in Opposition of KAM and Katzer's Special

Motion to Strike Jacobsen's Libel Claim (Docket # 59) in reply to the arguments in the

Memorandum in Opposition.

Case Number C 06 1905 JSW
Reply Memorandum in Support of Defendants Matthew Katzer and Kamind Associates, Inc.'s
motion to dismiss for failure to state a claim on which relief can be granted and for lack of subject
matter jurisdiction and motion to bifurcate and stay
9

**E.      Count 5 and Count 4 (if it is not dismissed entirely) should be bifurcated and stayed**

KAM and Katzer do not believe that Jacobsen will prevail on any claim, much less at the summary judgment stage.  Contrary to Jacobsen's assertion, proceeding with the antitrust claims simultaneously with the patent claims will delay resolution of the case by increasing complexity, whereas many of the issues will likely be mooted by addressing the patent claims first. Resolution of the patent enforceability issue may dispose of the antitrust claims altogether. Therefore these claims should be bifurcated and discovery stayed pending, at least, resolution of the patent claims on summary judgment.

**F.      Conclusion**

For the foregoing reasons, KAM and Katzer respectfully request that this Court grant KAM and Katzer's motion to dismiss Counts 4 and 7 of Jacobsen's complaint and bifurcate and stay discovery on Count 5 pending resolution of the patent enforceability claims.

Dated July 19, 2006.

_____/s/_____
R. Scott Jerger (*pro hac vice*)
Field & Jerger, LLP
610 SW Alder Street, Suite 910
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276
Email: scott@fieldjerger.com

I certify that on July 19, 2006, I served the foregoing reply memorandum on the following parties through their attorneys via the Court's ECF filing system:

Victoria K. Hall                                   David M. Zeff
Law Office of Victoria K. Hall         Law Office of David M. Zeff
401 N. Washington Street, Suite 550   1388 Sutter Street, Suite 820
Rockville, MD 20850                          San Francisco, CA 94109

_____/s/_____
R. Scott Jerger (*pro hac vice*)
Field Jerger LLP

Case Number C 06 1905 JSW
Reply Memorandum in Support of Defendants Matthew Katzer and Kamind Associates, Inc.'s motion to dismiss for failure to state a claim on which relief can be granted and for lack of subject matter jurisdiction and motion to bifurcate and stay