United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERT JACOBSEN,

    Plaintiff,

  v.

MATTHEW KATZER, KAMIND ASSOCIATES, INC. and KEVIN RUSSELL,

    Defendants.

No. C 06-01905 JSW

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND SPECIAL MOTIONS TO STRIKE**

Now before the Court are the motion filed by Matthew Katzer and Kamind Associates, Inc. ("KAM") to dismiss counts four and seven for failure to state a claim upon which relief can be granted and to bifurcate and a special motion to strike count seven under California Civil Procedure Code § 425.16.  Also before the Court are the motion filed by Kevin Russell to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted and a special motion to strike under California Civil Procedure Code § 425.16.  Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, the Court hereby GRANTS Defendants' motions to dismiss, DENIES Defendants' motion to bifurcate without prejudice, GRANTS Defendants' special motions to strike, and AWARDS attorneys' fees in the amount of $14,486.68 for Defendants Katzer and KAM and $16,976.25 for Defendant Russell.

**BACKGROUND**

Matthew Katzer is the chief executive officer and chairman of the board of directors of KAM, a software company based in Portland, Oregon that develops software for model railroad enthusiasts.  Kevin Russell is KAM's attorney, who is also based in Portland, Oregon.  The Java

1  Model Railroad Interface ("JMRI") Project is an on-line, open source community that also
2  develops model train software.  Plaintiff, Robert Jacobsen, works for the Lawrence Berkeley
3  National Laboratory and is a professor of physics at the university, as well as a model train
4  hobbyist and a contributing member of the JMRI Project.  Jacobsen allegedly used a
5  government electronic mail address linked to the Department of Energy when corresponding
6  with the members of the JMRI Project.

Jacobsen contends that Defendants fraudulently secured patents for their software and, despite knowing the patents were invalid and unenforceable, sought to enforce the patents and collect patent royalties, threatened litigation, cybersquatted on a JMRI Project trademark, and made false charges in a Freedom of Information Act ("FOIA") request to the Department of Energy who, they apparently believed, might have been involved in sponsoring the JMRI Project.

On March 13, 2006, Jacobsen filed this declaratory relief action alleging that defendants KAM and Katzer, in conjunction with the company's attorney, Russell, fraudulently obtained patents for model train control system technology.  In addition, Jacobsen makes claims for violations of antitrust laws, California Business and Professions Code § 17200, the Lanham Act and for libel.

**ANALYSIS**

**A.    Matthew Katzer and Kamind Associates, Inc.'s Motion to Dismiss and to Bifurcate.**

   **1.    Legal Standard on Motion to Dismiss.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  A motion to dismiss should not be granted unless it appears beyond a doubt that a plaintiff can show no set of facts supporting his or her claim.  *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  Thus, dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984).  The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true.  *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986).  The

2

court, however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged. *Cleggy v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).

### 2.     Count Four – Antitrust Violation Under Sherman Act Section Two.

In his original complaint, Jacobsen alleges that both KAM and Katzer have violated Section 2 of the Sherman Act. The class of persons who may maintain a private damage action under the antitrust laws is broadly defined in Section 4 of the Clayton Act, which provides in pertinent part: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold damages by him sustained." 15 U.S.C. § 15. Section 16 of the Clayton Act provides in pertinent part that: "Any person ... shall be entitled to sue for and have injunctive relief ... against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26. "A literal reading of the statute is broad enough to encompass every harm that can be attributed directly or indirectly to the consequences of an antitrust violation." *Associated General Contractors of California v. California State Council of Carpenters ("AGC")*, 459 U.S. 519, 529 (1983). However broadly described, it "is reasonable to assume that Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action to recover threefold damages for the injury to his business or property." *Blue Shield of Virginia, Inc. v. McCready*, 457 U.S. 465, 477 (1982).

The plaintiff must have antitrust standing and to determine whether that requirement is met, the Court must "evaluate the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them." *ACG*, 459 U.S. at 535. The Ninth Circuit has summarized the factors relevant to a finding of antitrust standing as follows: "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative

3

recovery; and (5) the complexity of apportioning damages." *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 987 (9th Cir. 2000) (quoting *American Ad Mgmt. v. General Tel. Co.*, 190 F.3d 1051, 1054-55 (9th Cir. 1999)). To conclude that there is antitrust standing, the Court need not find in favor of the plaintiff on each factor. *American Ad Mgmt.*, 190 F.3d at 1055 (citing *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1997)). Instead, the Court must balance the factors, giving great weight to the nature of the plaintiff's alleged injury. *Id.*

The first factor – the nature of plaintiff's alleged injury – requires a showing of "antitrust injury, *i.e.*, injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Knevelbaard*, 232 F.3d at 987 (quoting *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)). Parsing the Supreme Court's definition of injury, the Court must find four factors: (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent. *See id.* Antitrust injury is harm that "reflect[s] the anticompetitive effect either of the violation or of anticompetitive effects made possible by the violation." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Lastly, to qualify as antitrust injury, any harm allegedly suffered must have occurred in the market where competition is allegedly being restrained. *Association of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.*, 241 F.3d 696, 704 (9th Cir. 2001) (quoting *American Ad Mgmt.*, 190 F.3d at 1057).

Jacobsen lacks standing to make out a claim for antitrust injury. Jacobsen, a model train hobbyist, alleges that he was injured by failing to receive academic consulting income as a result of his having to take time off from work to address the concerns raised by the disputed patents. Jacobsen has failed to allege injury in the relevant market. Lost income in an unrelated field is simply not the type of injury the antitrust laws were designed to protect. Jacobsen's lost income in the academic field or as a research scientist as a result of his efforts in this matter does not constitute antitrust injury in the relevant model train market. *See Ass'n of Wash. Pub. Hosp. Dists.*, 241 F.3d at 704-05 ("The requirement that the alleged injury be related to anti-competitive behavior requires, as a corollary, that the injured party be a participant in the same

4

market as the alleged malefactors .. [and] that the plaintiff ... suffered its injury in the market where competition is being restrained. Parties whose injuries, though flowing through that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury.").

Plaintiff must demonstrate injury in fact and the claimed injury must be sufficiently direct. There "must be 'not a mere causal link, but a direct effect.'" *Knevelbaard*, 232 F.3d at 989 (quoting *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 268 (3d Cir. 1998)). To assess the directness of the alleged injury, the Court must "look to the chain of causation between [the alleged] injury and the alleged restraint in the market." *American Ad Mgmt.*, 190 F.3d at 1058. Speculative damages are found where the injury is indirect or "may have been produced by independent factors." *AGC*, 459 U.S. at 542. It is "appropriate for § 4 purposes 'to consider whether a claim rests at bottom on some abstract conception or speculative measure of harm.'" *Id.* at 543 (quoting *McCready*, 457 U.S. at 475, n.11). "The indirectness of the alleged injury also implicates the strong interest, identified in our prior cases, in keeping the scope of complex antitrust trials within judicially manageable limits. These cases have stressed the importance of avoiding either the risk of duplicate recoveries on the one hand, or the danger of complex apportionment of damages on the other." *AGC*, 459 U.S. at 543-44.

There is no direct connection between the alleged injury which is particularized to Jacobsen in his professional capacity as an academic and the alleged misconduct in the business of model train software marketing. Jacobsen, a model train enthusiast and hobbyist who intended, in conjunction with the efforts of other enthusiasts, to make available for free an alleged competing software program, cannot make out a claim for violation of the antitrust laws. His alleged injury is not injury of the type the antitrust laws were intended to prevent: it is not in the relevant market and it does not flow from that which makes defendants' acts allegedly unlawful. Therefore, Jacobsen lacks standing to make out a claim under the Sherman Act and his fourth cause of action is dismissed without leave to amend.[1]

---

[1] Jacobsen similarly lacks standing to make a claim for injunctive relief under Sherman Act Section 16 because he has failed to allege that he may be threatened with a loss the antitrust laws were designed to prevent. *See Cargill, Inc. v. Monfort of Colo., Inc.*, 479

5

### 3. **Count Seven – Libel.**

Under California law, libel is "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. "Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made." *Raghavan v. Boeing Co.*, 133 Cal. App. 4th 1120, 1132 (2005).

Jacobsen contends that KAM's Freedom of Information Act request to the United States Department of Energy constitutes a libelous publication which falsely accused him of patent infringement and subjected him to embarrassment and injury to his academic reputation. Construed in the light most favorable to Jacobsen, the FOIA request states that the JMRI Project infringes the patents owned by Kamind Associates and designates Jacobsen as the subject of Kamind's search for documents. By its very terms, the request does not make any statements of fact about Jacobsen, but to the extent that an inference is drawn that he was responsible for JMRI's possible infringement, a mere claim of patent infringement is not defamatory. *See CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1084 (W.D. Ky. 1995) ("Depending on how a statement is made, a charge of patent infringement would not hold a company to hatred, ridicule or disgrace. Among business people, patents are known to be complicated and in infringement issues even more so. The statement by one party that another is infringing does not carry an intrinsic moral or business turpitude. For instance, it is not the same as calling one a liar, bankrupt or untrustworthy."); *see also Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1025 (2002) (claim for patent infringement considered disparaging but not defamatory for purposes of insurance coverage).

Therefore, Jacobsen fails to make out a claim for libel because the FOIA request does not make a statement of fact about Jacobsen, and to the extent an inference of accused

---

U.S. 104, 109 (1986) (threatened antitrust injury is a prerequisite to equitable relief).

6

infringement may be drawn, such a statement is not defamatory. Therefore, Jacobsen's seventh claim for relief is dismissed without leave to amend.[2]

### 4. Bifurcation.

In the alternative, Defendants Katzer and KAM move to bifurcate the fourth and fifth counts and request that discovery be stayed pending resolution of the patent validity claims. The Court has dismissed count four without leave to amend. The Court further finds that the request to bifurcate count five is premature at this time, due to the amendment of the original complaint. Therefore, the Court DENIES the request to bifurcate at this time without prejudice to a showing of good cause to bifurcate once the pleadings are finalized.

### B. Defendant Kevin Russell's Motion to Dismiss.

Defendant Kevin Russell, KAM's private attorney, moves to dismiss counts seven for libel and four for antitrust violations. The Court dismisses these causes of action against Russell for the same reasons the same claims are dismissed against Defendants KAM and Katzer for failure to state a claim upon which relief can be granted.

However, Defendant Russell also moves to dismiss all claims against him on the basis that this Court lacks personal jurisdiction over him as an attorney based in Oregon. Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be "present" in that forum for all purposes, a forum may exercise only "specific" jurisdiction – that is, jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). There is no question that, based on the record before the Court, Russell lacks sufficiently substantial, continuous and systematic contacts with this forum so as to create a basis for general jurisdiction over him. Instead, the dispute is whether the only ostensibly California contacts in this matter – the sending of the FOIA request which requests a search of a Berkeley, California facility and the

---

[2] Given an opportunity at oral argument to proffer additional facts making out a claim for libel should leave be granted, Jacobsen was unable to do so. *See DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (leave to amend is properly denied where amendment would be futile).

7

sending of a cease and desist and follow-up demand letters for payment to Plaintiff at his Berkeley, California address – create sufficient specific contacts.

This Court must employ a three-part test to evaluate the nature and quality of Russell's contacts for purposes of specific jurisdiction: "(A) some action must be taken whereby defendant purposefully avails himself or herself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; (B) the claim must arise out of or result from defendant's forum-related activities; and (C) exercise of jurisdiction must be reasonable." *Sher*, 911 F.2d at 1361 (citing *Cubbage*, 744 F.2d at 668).

"To be subject to specific jurisdiction, a defendant must have purposefully avail[ed] itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted). "'Purposeful availment' requires that the defendant 'have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher*, 911 F.2d at 1362 (citing *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)). The second prong of the test for specific jurisdiction requires that "the contacts constituting purposeful availment must be the ones that give rise to the current suit." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000). The third prong of the test for specific jurisdiction requires that the exercise of jurisdiction be reasonable. *Sher*, 911 F.2d at 1361.

In his complaint, Jacobsen contends that there is sufficient purposeful availment by virtue of Russell's sending the FOIA request requesting a search of a Berkeley, California facility and sending a cease and desist letter and follow-up demand letters for payment to Plaintiff at his Berkeley, California address, all actions performed at the behest of Russell's Oregon-based client. The sending of a cease and desist letter into a particular jurisdiction is not sufficient to create personal jurisdiction over an out-of-state defendant. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998). The court reasoned that it did not comport with notions of fair play to subject a patentee to personal jurisdiction in a forum solely for informing a party who happens to be located there of suspected infringement. *Id.* A

8

cease and desist letter may be viewed as an offer of settlement, and it is neither fair nor efficient to provide a disincentive to settlement by subjecting the sender to personal jurisdiction out of state. For the same reasons, the sending of follow-up demand letters does not confer specific jurisdiction on an out-of-state attorney. Further, there is no indication that Jacobsen has alleged any particular cause of action which arises from the sending of the demand letters. Lastly, although the FOIA request underlies Plaintiff's claim against Russell for libel, and does request that certain action be taken in California, the Court has dismissed the claim for libel for failure to state a claim upon which relief can be granted. Therefore, the Court finds that there is no basis for finding personal jurisdiction over Defendant Kevin Russell and dismisses him from the complaint.

**C.    Defendants' Special Motions to Strike.**

Both Katzer and KAM as well as Russell move to strike Jacobsen's libel claim, arguing that the basis of the claim, the filing of a FOIA request to the Department of Energy, is a protected communication under California's anti-SLAPP statute as it was made in anticipation of bringing legal action against Jacobsen.

California's anti-SLAPP ("Strategic Lawsuit Against Public Participation") statute provides a mechanism for a defendant to strike civil actions brought primarily to chill the exercise of free speech. Cal. Code Civil Proc. § 425.16(b)(1); *see also Metabolife International, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1221 (S.D. Cal. 2002). The California Legislature passed the statute and explicitly recognized "the public interest to encourage continued participation in matters of public significance ... and [found] that this participation should not be chilled through abuse of the judicial process." *Metabolife*, 213 F. Supp. 2d at 1221 (citations omitted). Thus, to deter such chilling, a prevailing defendant on a special motion to strike shall be entitled to recover his or her reasonable attorney's fees and costs. *Id.*, citing Cal. Code Civil Proc. § 425.16(c).

9

Section 425.16 provides, in relevant part, that

A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a ... judicial proceeding, or any other official proceeding authorized by law....

Cal. Code Civil Proc. §§ 425.16(b)(1); 425.16(e).

A special motion to strike a SLAPP suit involves a two-step analysis. First, the court must decide whether the defendant has made a threshold showing that the challenged cause of action is one 'arising from' protected activity. *See, e.g., City of Cotati v. Cashman*, 29 Cal. 4th 69, 76 (2002). The defendant may meet this threshold burden by showing that the act which forms the basis for the plaintiff's cause of action was a written or oral statement made before a judicial proceeding. *Church of Scientology of California v. Wollersheim*, 42 Cal. App. 4th 628, 646 (1996). If the defendant establishes a prima facie case, the burden then shifts to the plaintiff to establish a probability that the plaintiff will prevail on the claim. *Id.*; *see also Cotati*, 29 Cal. 4th at 76. In making its determination, the trial court is required to consider the pleadings and supporting and opposing affidavits stating the facts upon which liability or defense is based. Cal. Code Civil Proc. § 425.16(b).

**1.     Defendants Have Met the Threshold Burden of Challenged Cause of Action Arising From Protected Activity.**

The right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. *Wollersheim*, 42 Cal. App. 4th at 647. The constitutional right to petition includes the basic act of filing litigation or otherwise seeking administrative action. *Briggs v. Eden Council for Hope and Opportunity*, 19 Cal. 4th 1106, 1115 (1999). By logical extension, the right to petition also necessarily includes participation in the litigation as well. *See id.* Therefore, a cause of action arising from defendant's litigation activity may properly be the subject of a section 425.16 motion to strike. *Wollersheim*, 42 Cal. App. 4th at

10

648. In addition, in interpreting the scope of a section 425.16 motion to strike, courts have "adopted a fairly expansive view of what constitutes litigation-related activities." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 908 (2002). The scope of protected litigation activities broadly includes communication, including statements to the court and other, non-speech conduct. *See, e.g., Susan S. v. Israels*, 55 Cal. App. 4th 1290, 1300-01 (1997). In addition, "communications preparatory to or in anticipation of the bringing of an action or other official proceeding ... are ... entitled to the benefits of section 425.16." *Briggs*, 19 Cal. 4th 1106, 1115 (citing *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777, 784 (1996)).

The FOIA request was sent in an effort to gather information about a possible infringement lawsuit. (*See* Declaration of Matthew Katzer in support of special motion to strike, ¶ 7.) It is clear that KAM was, at the time of the filing of the request, contemplating filing an infringement action. The stated premise of the request is the belief that the JMRI Project, possibly sponsored by the Physics Division of the Berkeley Livermore Labs, infringed the patents owned by KAM. (*See id.*, Ex. 1.) The request even mistakenly states that a lawsuit was already filed by KAM in federal court. (*Id.*)[3] In addition, Jacobsen's complaint for declaratory relief specifically states that "Defendants' conduct has put Jacobsen in reasonable and serious apprehension of imminent suit for infringement of the '329 patent." (Complt. at ¶ 6.)[4] Therefore, because the FOIA request was made in anticipation of bringing legal action

---

[3] The merits or validity of the particular content at issue is not the appropriate inquiry in determining whether or not the anti-SLAPP statute applies. The merits of the claims become relevant only at the second step of the anti-SLAPP analysis, when plaintiff must present evidence showing a reasonable probability of success on his claims. *Mann v. Quality Old Time Service, Inc*., 120 Cal. App. 4th 90, 105 (2004).

[4] In order to maintain subject matter jurisdiction over the declaratory action filed by Jacobsen, the Court must find that there is an actual controversy. *See, e.g., Fina Research, S.A. v. Baroid Ltd.,* 141 F.3d 1479, 1481 (Fed. Cir. 1998). First, the patentee must make an explicit threat or take other action that creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit. *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995). Second, there must be present activity that could constitute infringement or concrete steps taken with the intent to conduct such activity. *Id.* Jacobsen's contention that any lawsuit filed by Defendants could not have been "seriously and in good faith" contemplated because such a lawsuit would have been meritless, not only contradicts statements in his complaint which form the basis for subject matter jurisdiction over his lawsuit, but is inapposite. Whether Defendants would have prevailed on any potential lawsuit is irrelevant with regard to the question whether both Jacobsen and Defendants contemplated that such a lawsuit may have been imminent.

11

against Jacobsen and/or JMRI for possibly infringing activities, Defendants have therefore met their threshold burden of demonstrating that the challenged cause of action is one 'arising from' protected activity. *See, e.g., Cotati*, 29 Cal. 4th at 76.

### 2. Plaintiff Cannot Meet His Burden of Demonstrating a Probability of Prevailing on the Merits.

Once Defendants have reached the threshold showing, the burden shifts to Jacobsen to establish a probability of prevailing at trial. *See id.* This Court has dismissed the cause of action for libel for failure to state a claim upon which relief can be granted. Because the Court has determined that the cause of action should be dismissed as a matter of law, Jacobsen cannot meet his burden of demonstrating a likelihood of prevailing on the merits. *See Dove Audio*, 47 Cal. App. 4th at 784-85 (holding that the court did not err in granting a special motion to strike under section 425.16 on causes of action absolutely barred by the litigation privilege). Because Defendants have met their threshold burden of demonstrating that the specific allegations for the cause of action for libel arises from protected activity and Jacobsen cannot make a prima facie case of likelihood of prevailing on the merits, the Court GRANTS Defendants' special motions to strike the seventh cause of action for libel.[5]

### 3. Reasonable Attorney's Fees and Costs.

A "prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Code Civil Proc. § 425.16(c).[6] The prevailing party bears the burden of submitting detailed time records justifying the hours claimed to have been expended. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). As a party

---

[5] Because count five against Defendant Russell has been dismissed against him due to lack of personal jurisdiction and the motion to strike is granted as to Defendant Russell on the libel claim, the Court need not address whether the FOIA request allegations in the Section 17200 claim are merely incidental or are the principal thrust or gravamen of the claim and therefore worthy of protection under Section 425.16. *See Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 672 (2005).

[6] An award of attorney's fees to a prevailing party on a special motion to strike is mandatory. Cal. Civ. Proc. Code § 425.16(c); *Pfeiffer Venice Properties v. Bernard*, 101 Cal. App. 4th 211, 215 (2002) (citing *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001)). The Court clearly has jurisdiction over Plaintiff in order to compel him to pay reasonable attorney's fees incurred by Defendants who have prevailed on their special motions to strike.

12

seeking fees and costs, a defendant "bear[s] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. To that end, the court *may* require defendants to produce records sufficient to provide a proper basis for determining how much time was spent on particular claims." *ComputerXpress, Inc. v. Jackson,* 93 Cal. App. 4th 993, 1020 (2001) (citations omitted; emphasis added). According to Civil Local Rule 54-6(b), unless otherwise ordered, a motion for attorney's fees must be supported by a declaration containing, among other things, a statement of the services rendered together with a summary of the time spent by each person. Depending on the circumstances, the Court may require production of an abstract of or the contemporary time records for inspection, including *in camera* inspection, as the Judge deems appropriate. Civ. L. R. 54-6(b)(2).

An award of attorney's fees must be reasonable, and adequately compensate Defendants for the expense of responding to a baseless claim. *See Metabolife*, 213 F. Supp. 2d at 1221-22. The Court has broad discretion to determine the reasonable amount of attorney's fees and costs and must have substantial evidence to support the fee award. *Id.* at 1222. However, the prevailing party is only entitled to recover fees and costs related to the motion to strike, not to the whole suit or other motions. *Lafayette Morehouse, Inc. v. The Chronicle Publishing Co.*, 39 Cal. App. 4th 1379, 1383 (1996).

In this matter, Defendants Katzer and KAM declare that they have incurred $20,782.58, inclusive of $450.68 in expenses as a result of researching, filing and arguing the anti-SLAPP special motion to strike. (Declaration of R. Scott Jerger in support of his motion for attorney's fees ("Jerger Decl."), ¶ 3.) Counsel explains that he spent a total of 59.8 hours preparing the motion papers related to the special motion to strike. (*Id.*, ¶ 4(a)-(c).) He also contends that he spent a total of 28.4 hours preparing for and attending the court hearing on the special motion and further alleges that such time was spent exclusively on this motion, and not the other pending motions or the case management conference. (*Id*., ¶ 4(d); Defendants Katzer and KAM's Reply to Plaintiff's Objections at 2.) The Court finds this additional court attendance estimate to be excessive and reduces the estimate for time spent on the hearing of the special motion to 4 hours. Therefore, the Court awards fees to counsel for Katzer and KAM in the

13

amount of $14,036 (for 63.8 hours at an hourly rate of $220). The Court also awards costs in the amount of $450.68. Therefore, the total amount owing to Katzer and KAM is $14,486.68.

Additionally, Defendant Russell declares that he has incurred a total of $43,491.25 in attorney's fees as a result of researching, filing and arguing the anti-SLAPP special motion to strike. (Declaration of David M. Zeff in support of award of attorney's fees ("Zeff Decl."), ¶ 6; Defendant Russell's Reply to Plaintiff's Objection at 5.) This estimate includes 84.55 hours of time at a rate of $235 per hour for Mr. Moore's services and 67.35 hours at a rate of $300 per hour for Mr. Zeff's services, plus an additional 4.2 hours billed by Mr. Moore and an additional 8.1 hours billed by Mr. Zeff in connection with reviewing Plaintiff's objections and researching and drafting a reply. (Zeff Decl., ¶¶ 2, 5; Reply at 5; Declaration of David M. Zeff in reply to objections, ¶¶ 4, 5.) Mr. Zeff also explains that he includes some, but not all, of the time he and Mr. Moore spent on the motion to dismiss because some of the substantive issues in the special motion to strike overlap. The Court finds this unpersuasive as the motion to dismiss was a stand-alone motion and only fees incurred due to the filing of the special motion to strike are recoverable. *See Lafayette Morehouse, Inc.*, 39 Cal. App. 4th at 1383. The Court also finds it unreasonable that two attorneys, billing at comparable rates, were necessary to complete the same tasks it took a single attorney to complete for Defendants Katzer and KAM. Therefore, the Court will only take into consideration the fees incurred by Mr. Zeff and reduce that amount by twenty-five percent because the Court cannot award fees for time incurred on unrelated motions. Therefore, the total amount owing to Defendant Russell is $16,976.25 (75.45 hours reduced by 25% at an hourly rate of $300).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss, DENIES Defendants' motion to bifurcate without prejudice, GRANTS Defendants' special motions to strike, and AWARDS attorneys' fees to Defendants in the amount of $14,486.68 for Defendants Katzer and KAM and $16,976.25 for Defendant Russell. Such payment shall be made no later than October 30, 2006.

**IT IS SO ORDERED.**

Dated: October 20, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE