R. Scott Jerger (*pro hac vice*) (Oregon State Bar #02337)
Field Jerger LLP
621 SW Morrison, Suite 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276
Email: scott@fieldjerger.com

John C. Gorman (CA State Bar #91515)
Gorman & Miller, P.C.
210 N 4th Street, Suite 200
San Jose, CA 95112
Tel: (408) 297-2222
Fax: (408) 297-2224
Email: jgorman@gormanmiller.com

Attorneys for Defendants
Matthew Katzer and Kamind Associates, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBERT JACOBSEN, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> MATTHEW KATZER, an individual, and KAMIND ASSOCIATES, INC., an Oregon corporation dba KAM Industries, <br><br> Defendants. | Case Number C06-1905-JSW <br><br> Hearing Date: December 4, 2009 <br> Hearing Time:  9:00am <br> Place:  Ct. 11, Floor 19 <br><br> Hon. Jeffrey S. White <br><br> **DEFENDANTS MATTHEW KATZER AND KAMIND ASSOCIATES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT [FED. R. CIV. P. 56]** |

Case Number C 06 1905 JSW
Defendants' Motion for Summary Judgment

i

# Table of Contents

NOTICE .......................................................................................................................... 1

MOTION ........................................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................ 1

INTRODUCTION AND STATEMENT OF RELEVANT FACTS ............................... 3

ARGUMENT ................................................................................................................. 5

  I. STANDARD OF REVIEW ..................................................................................... 5

  II. DEFENDANTS HAVE NOT INFRINGED PLAINTIFF'S COPYRIGHTED  WORK...... 5

    *A.   THE COPYING OF THE DECODER DEFINITION TEXT FILES DID NOT EXCEED THE SCOPE OF THE ARTISTIC LICENSE* ........................................................... 6

    *B.   DEFENDANTS DID NOT DISTRIBUTE ANY OF PLAINTIFF'S ORIGINAL WORKS*  7

    *C.   PLAINTIFF CANNOT BRING A DMCA CLAIM AS A MATTER OF LAW* ................. 13

  III.  PLAINTIFF IS NOT ENTITLED TO ANY DAMAGES AS A MATTER OF LAW UNDER THE COPYRIGHT ACT ........................................................................ 14

    *A.   ADDITIONAL RELEVANT FACTS RELATING TO DAMAGES* ................................. 14

    *B.   STATUTORY DAMAGES AND ATTORNEY FEES* ...................................................... 16

    *C.   ACTUAL DAMAGES* ..................................................................................... 19

CONCLUSION ............................................................................................................ 21

<div align="center">CASES</div>

*Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990) ........................................................................................................... 16

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-27 (1986) ............................................. 5

*Cook v. Robbins*, 232 F.3d 736 (9th Cir. 2001) ...................................................... 13

*Derek Andrew, Inc. v. Poof Apparel Corporation*, 528 F.3d 696, 700 (9th Cir. 2008) .............. 17

*eBay v. MercExchange*, 547 U.S. 388 (2006) ........................................................... 14

*Evans Newton, Inc. v. Chicago Sys. Software*, 793 F.2d 889, 896 (7th Cir. 1986). ........... 16

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) ..................... *passim*

*Frank Music Corp. v. Metro Goldwyn-Mayer,* 772 F.2d 505, 512 (9th Cir. 1985)) ..................... 20

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1118 (2nd Cir. 1986) ................ 20

*Harper v. Row, 471 U.S. 539, 547-548 (1985)* ............................................................ *8*

*Heim v. Universal Pictures Corp., Inc.*, 154 F.2d 480, n.8 (2nd Cir. 1946) ...................... 13

*Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008) ............................................... 2, 6

*Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir. 1998) ............................................. 16

*Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002 ............................................. 20

*Matthew Bender & Company, Inc. v. West Publishing Co.*, 158 F.3d 674, 682 (9th Cir. 1998)9, 13

*Miller v. Universal City Studios, Inc.*, 650 F.2d 1365 (5th Cir. 1981). ........................ 19

*On Davis v. The Gap*, 246 F.3d 152, 159 (2nd Cir. 2001) ......................................... 19

*Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004). .............. 20

*Walker v. Forbes, Inc.,* 28 F.3d 409, 412 (4th Cir. 1994 ........................................ 20

*Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990) ................................... 18

<div align="center">STATUTES</div>

17 U.S.C. § 412 ....................................................................................... 16

17 U.S.C. § 412(2). .................................................................................................. 19

17 U.S.C. § 504 ....................................................................................................... 16

17 U.S.C. § 505 ....................................................................................................... 16

17 U.S.C. § 504(b). .................................................................................................. 19

17 U.S.C. § 504(c)(1). ........................................................................................ 16, 18

<sub>TREATISES</sub>

Nimmer on Copyright, § 2.01[B], 2-17 .................................................................... 14

**NOTICE**

To the court and all interested parties, please take notice that a hearing on Defendants Matthew Katzer and Kamind Associates, Inc.'s Motion for Partial Summary Judgment will be held on December 4, 2009 at 9:00 a.m. in Courtroom 11, Floor 19, of the above-entitled court located at 450 Golden Gate Avenue, San Francisco, California.

**MOTION**

Defendants Matthew Katzer ("Katzer") and Kamind Associates, Inc. ("KAM") (collectively referred to as "KAM" or "Defendants") move the court for summary judgment on Robert Jacobsen's ("Plaintiff") copyright infringement claim (Count 4) and Plaintiff's Digital Millennium Copyright Act ("DMCA") violation claim (Count 5) and on all of the associated relief sought for these claims in Plaintiff's Second Amended Complaint because Defendants did not distribute any of Plaintiff's original works. Alternatively, Defendants move this Court for summary judgment on Plaintiff's copyright infringement claim because Plaintiff is not entitled to actual damages, statutory damages or attorney fees under the Copyright Act. This is a partial motion for summary judgment because Defendants are not challenging, at this stage, the cyber-squatting claim (count 7) in the Complaint. Defendants assert that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law as to Plaintiff's Count 4 and Count 5.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether summary judgment for Defendants should be granted on Plaintiff's copyright infringement claim (Count 4) and the associated relief requested because Defendants did not infringe Plaintiff's original works as a matter of law.

2. Whether summary judgment for Defendants should be granted on Plaintiff's DMCA violation claim (Count 5) and the associated relief requested because Defendants did not infringe Plaintiff's original works as a matter of law.

3. Whether, alternatively, summary judgment for Defendants should be granted on Plaintiff's copyright infringement claim and the associated relief requested because Plaintiff is not entitled to any actual damages, statutory damages or attorney fees as a matter of law.

## SUMMARY OF THE ARGUMENT

Summary judgment should be granted for Defendants on Plaintiff's copyright infringement claim and the related claim for violation of the DMCA, Counts 4 and 5 in Plaintiff's Second Amended Complaint.  While Defendants did copy Plaintiff's Decoder Definition Text Files, copying alone does not automatically lead to a finding of copyright infringement liability.  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348 (1991).  The Plaintiff must also prove that the elements that were copied are original to Plaintiff and therefore copyrightable.  *Id*.  Defendants' copying of the Decoder Definition Text Files was within the scope of Plaintiff's license and therefore does not lead to copyright infringement liability.  *Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008).  Defendants' distribution of the Decoder Definition Text files, while outside the license, does not lead to copyright infringement liability since none of the distributed works are original to Plaintiff, and are therefore non-copyrightable.  *Feist Publications, Inc.*, 499 U.S. at 350.  Since Plaintiff's work is not copyrightable, Plaintiff's DMCA claim should also be dismissed since Defendants cannot intentionally or knowingly abet copyright infringement of a non-copyrightable work.

Alternatively, Plaintiff's copyright infringement claim should be dismissed because Plaintiff there is no genuine issue of material fact that Plaintiff has not suffered any actual damages and Plaintiff is not entitled to statutory damages as a matter of law.  Since Plaintiff does not seek declaratory relief and is not entitled to injunctive relief (because there is no genuine

issue of material fact that Plaintiff has not suffered any harm), Defendants are entitled to summary judgment on both the liability and damage components of the copyright infringement claim.

## INTRODUCTION AND STATEMENT OF RELEVANT FACTS

This case is a dispute between two manufacturers of software for model trains.  Plaintiff, Robert Jacobsen, is a leader in the Java Model Railroad Initiative (JMRI), a group of model railroad hobbyists who produce a software product called Decoder Pro.  This product is distributed for free on the internet (at www.sourceforge.net) under an "open source" license. Open Source is an approach to the design and distribution of software that generally allows downstream developers to access source code and requires free redistribution of that code.  *See generally The Open Source Definition*, Open Source Initiative, available at www.opensource.org (last viewed October 27, 2009).  Defendants, Matthew Katzer and Kamind Associates, Inc. (collectively "KAM") produce a competing for profit software product called Decoder Commander.  To date, KAM has sold 29 copies of Decoder Commander.  Declaration of Matthew Katzer, (hereinafter "Katzer Decl.") ¶ 5.  KAM ceased production of Decoder Commander in August 2008, during the pendency of this lawsuit, based on continual allegations of copyright infringement from the Plaintiff.  Katzer Decl. ¶ 9.

This is primarily a copyright infringement case.[1]  It is important to note that the material that Plaintiff alleges that Defendants are infringing is not software source code or executable code, but merely text files that accompany the JMRI Decoder Pro software product.  Katzer Decl. ¶¶ 23-24.  These text files include syntax in xml and are distributed with both Plaintiff's

---

[1] There have been many, many other claims brought by Plaintiff against Defendants in this case, most of which have been dismissed by this Court under FRCP 12, including Counts 1, 2, 3 and 6 of the operative Second Amended Complaint.  The surviving, remaining claims involve (1) copyright infringement; (2) violation of the Digital Millennium Copyright Act; and (3) cyber-squatting.  The cyber-squatting claim is not subject to this motion for partial summary judgment. Defendants also have a counterclaim for copyright infringement against Plaintiff.

and Defendants' software products even though the software products are written using different programming languages.  Katzer Decl., ¶ 23.

The purpose of these text files is to help a user program a "decoder" in a model train. Katzer Decl., ¶ 26.  A "decoder" is a piece of hardware contained in the engine of the model train that controls the functioning and operation of the train. Katzer Decl., ¶ 27.   For example, decoders control the speed of the train, the sounds of the train, which lights are on at a particular time, and other operational functions.  Katzer Decl., ¶ 28.

The act that gave rise to Plaintiff's copyright infringement claim was KAM's downloading of the JMRI xml text files used to help program decoders (hereinafter called "Decoder Definition Text Files") which are available for free for download by the public on www.sourceforge.net.  When KAM downloaded the Decoder Definition Text Files, they were subject to the "Artistic License," a license that puts minimal restrictions on the downstream use of the files and primarily requires that the distributor gave proper credit and attribution to JMRI in any redistributed or derivative work. *See e.g.* Second Amended Complaint [Dkt.# 191] (hereinafter "Complaint") at ¶ 337.  Plaintiff discovered this alleged copyright infringement during the pendency of his lawsuit against Defendants for declaratory relief on one of Defendants' patents.  Plaintiff rounded up assignments from the different JMRI authors of the Decoder Definition Text Files to himself, registered copyrights to the files and filed an amended complaint for copyright infringement against Defendants.

KAM used a tool to convert selective portions of the Decoder Definition Text Files for use in KAM's xml text files.  Katzer Decl., ¶ 15.   The Federal Circuit has concluded (and Defendants do not dispute), in the first appeal of this Court's denial of Plaintiff's first motion for a preliminary injunction, that the act of distributing portions of the Decoder Definition Text Files without proper attribution exceeded the scope of the Artistic License and therefore Plaintiff can maintain a claim for copyright infringement against Defendants for their distribution of portions

of the Decoder Definition Text Files with Defendants' Decoder Commander product.  *Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008)

However, neither this Court nor the Federal Circuit has confronted the issue of the nature of Plaintiff's copyrighted work because Plaintiff has never identified the work to which he maintains copyright rights.  Rather, Plaintiff's complaint merely maintains that there are more than 100 Decoder Definition Text Files.  Complaint at ¶ 223.  The Complaint contains copies of copyright registrations for each version of Decoder Pro, but these registrations merely identify the copyrighted work as the "JMRI Program and Decoder Definitions."  *See e.g.* Complaint, Appendix E.

## ARGUMENT

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 allows entry of summary judgment if "there is no genuine issue of material fact and…the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The Supreme Court encourages District Courts to utilize summary judgment in appropriate cases.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-27 (1986).

## II.  DEFENDANTS HAVE NOT INFRINGED PLAINTIFF'S COPYRIGHTED WORK

Plaintiff's claim that Defendants copied the Decoder Definition Text Files from the JMRI website hosted at www.sourceforge.net and then extracted portions of these files for use in Defendants' Decoder Commander software product.  *See e.g.* Complaint at ¶ 292.  Defendants do not deny that they downloaded literal versions of the Decoder Definition Text Files from sourceforge.net.  Defendants, however, do deny that their distribution of the non-literal versions of the Decoder Definition Text Files contained in Defendants' Decoder Commander constitutes copyright infringement because the information contained in Defendants' software that came from the Decoder Definition Text Files is not original and is therefore not copyrightable.

Plaintiff confusingly conflates numerous distinct and separate issues in his copyright infringement claim. First, Plaintiff improperly equates the act of copying with copyright infringement. *See e.g.* Complaint at ¶¶ 465-472. Copying alone, however, does not lead to copyright infringement liability, the Plaintiff must also prove that the elements that were copied are original to the Plaintiff and are copyrightable. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Second, Plaintiff fails to distinguish between the distinct acts of (1) copying the Decoder Definition Text Files and (2) distributing only selected portions of the Decoder Definition Text Files. *See e.g.* Complaint at ¶¶ 465-472. This is an extremely important distinction since Plaintiff's work that was subject to copying by Defendants (*i.e.* the entire literal version of the Decoder Definition Text Files) is different than selected portions of Plaintiff's work that was modified and distributed by Defendants (*i.e.* non-literal component parts of the Decoder Definition Text Files). It is also an important distinction to make because Defendants copying (*i.e.* downloading) of the Decoder Definition Text Files was within the scope of the Plaintiff's Artistic License and therefore cannot be an act that could lead to copyright liability, whereas Defendants modification and distribution of the Decoder Definition Text Files was outside the scope of the Artistic License (as determined by the Federal Circuit in this case) and therefore was an act that could lead to copyright infringement and liability.

### A. THE COPYING OF THE DECODER DEFINITION TEXT FILES DID NOT EXCEED THE SCOPE OF THE ARTISTIC LICENSE

Defendants admit that they downloaded the literal Decoder Definition Text Files from www.sourceforge.net. Katzer Decl., ¶¶11, 15. However, this act cannot lead to copyright infringement because this act does not exceed the scope of the license granted to KAM. *See Jacobsen v. Katzer*, 535 F.3d at 1379. Indeed, while not a central issue of the first appeal in this case, the Federal Circuit acknowledged in their opinion in this case that the conditions and limitations of the Artistic License only "govern the rights to modify and distribute the computer programs and files included in the downloadable software package." *Jacobsen v. Katzer*, 535 F.3d at 1382. Regarding copying, the clear language of the Artistic License is unlimited in

scope and there are no restrictions or conditions on copying at all. *See* Declaration of Robert Jacobsen In Support of motion for Preliminary Injunction [Dkt.#131], Ex. A (the Artistic License) (¶1 of the Artistic License provides that a licensee can make verbatim copies of the files without restriction). The only restrictions that the Artistic License places on the licensee are restrictions on the modification and distribution of the Decoder Definition Text Files. *Id. at ¶ 3, 4.*

Since Defendants did not exceed the scope of the license when they downloaded and copied the Decoder Definition Text Files, summary judgment should be granted for Defendants on Plaintiff's claim that Defendants infringed Plaintiff's copyright when Defendants *copied* the Decoder Definition Text Files verbatim.

## B. DEFENDANTS DID NOT DISTRIBUTE ANY OF PLAINTIFF'S ORIGINAL WORKS

To establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc.*, 499 U.S. at 361 (1991). For purposes of summary judgment, Defendants do not challenge the validity of Plaintiff's copyright, rather Defendants do not believe that Plaintiff's copyrighted works *distributed by Defendants* contain the requisite originality.

While Defendants copied, modified and distributed Plaintiff's work, the only act that exceeded the scope of the Artistic License was the distribution of portions of the Decoder Definition Files.[2] Therefore, it is important to focus on Plaintiff's work that was *copied and distributed* by Defendants to determine if copyright infringement occurred, as opposed to Plaintiff's work as a whole (which was copied by Defendants without exceeding the terms of the Artistic License).

---

[2] While Defendants also "modified" the files, this act alone does not lead to a violation of the license until the modified material is subsequently distributed. *See* Artistic License 3(b).

While the Decoder Definition Text Files themselves no doubt took time and energy to create, this labor is not compensable. "The primary objective of copyright law is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.'" *Feist Publications, Inc.*, 499 U.S. at 349 (citing, *inter alia*, the Constitution). Copyright law fundamentally rejects the "sweat of the brow" doctrine or notion that a copyright is a reward for hard work that goes into compiling facts or non-original material. *Feist Publications, Inc.*, 499 U.S. at 353. Defendants did not distribute literal versions of the Decoder Definition Text Files with their Decoder Commander product and did not distribute any work that was original to Plaintiff. Rather, Defendants' Decoder Commander contains (1) work original to Defendants and (2) information copied from Plaintiff, but not original to Plaintiff. Since the work copied, modified and distributed by Defendants is not original to Plaintiff, the copying does not lead to copyright infringement. *See Feist Publications, Inc.*, 499 U.S. at 348, 350 ("[C]opyright does not prevent subsequent users from copying from a prior author's work those constituent elements that are not original…". citing *Harper v. Row*, 471 U.S. 539, 547-548 (1985)). Rather, the copying must involve works original to the copyright holder. The *sine qua non* of copyright is originality. *Feist Publications, Inc.*, 499 U.S. at 345. To qualify for copyright protection, a work must be original to the author. *Id.* Originality, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. *Id.* Compilations of non-original works are not copyrightable *per se*, but are copyrightable only if the non-original materials assembled and collected are "selected, coordinated or arranged in such as way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. Therefore "assuming the absence of original written expression, only the compiler's selection and arrangement may be protected…". *Feist Publications, Inc.*, 499 U.S. at 350. The copyright therefore is limited and covers only the material contributed by the author and does not imply any exclusive right to the preexisting non-original work. *Feist Publications, Inc.*, 499 U.S. at

353.  Originality requires, however, that the compiler make the selection and arrangement independently and that it display some minimal level of creativity.  *Feist Publications, Inc.*, 499 U.S. at 358.  Not all selection and arrangement is sufficiently creative to be protected.  The creative spark is missing where (1) industry conventions or other external factors so dictate the selection that any person composing a compilation of the type at issue would necessarily select the same categories of information, or (2) the author made obvious, garden-variety, or routine selections.  *Matthew Bender & Company, Inc. v. West Publishing Co.*, 158 F.3d 674, 682 (9th Cir. 1998).  Thus, when it comes to the selection or arrangement of information, creativity inheres in making non-obvious choices from more than a few options and *de minimus* efforts will not be subject to copyright.  *Id.* at 682-683.  As a matter of law, Defendants did not incorporate any material or any selection and arrangement from the Decoder Definition Text Files original to Plaintiff into the KAM files.  Rather, the material copied by Defendants does not contain even a scintilla of creativity and therefore is not copyrightable.

To demonstrate, Defendants compare the JMRI and KAM versions of the "QSI Electric"[3] file since these files were used by Plaintiff as evidence of copyright infringement in his declaration in support of his motion for a preliminary injunction.  Declaration of Robert Jacobsen in Support of Motion for Preliminary Injunction [Dkt.# 237] (hereinafter "[Dkt.#237]"), ¶¶ 71-72, Ex. AD and AE.[4]   As with all of the decoder definition files, both of these files are xml text files, meaning that they do not contain any executable code.  Katzer Decl., ¶ 24.  Comparing the files, it is clear Defendants files do not contain Plaintiff's original works.

---

[3] QS Industries, Inc. (QSI) is a manufacturer of decoders and QSI provides a detailed reference manual, the "NMRA DCC Reference Manual for QSI Quantum HO Equipped Locomotives" (QSI Manual), to help hobbyists program decoders.  Katzer Decl., ¶ X.  While not an issue in this particular motion, Defendants own all rights to the copyrighted information in the QSI Manual via assignment from QSI.  Katzer Decl., ¶ X.

[4] The parties' QSI Electric files, AD and AE, are also the subject of Plaintiff's discussion with the undersigned at Plaintiff's deposition regarding the scope of his copyright.  Attached as Ex. 3, pages 22-28, to the Declaration of Katzer.

For example, by comparing the JMRI and KAM text for the first Configuration Variable, CV Number 1 (chosen merely because it is first), in the respective QSI Electric files, it becomes clear that Plaintiff's copyright infringement claim rests on the most slender of reeds.  The files contain the following text for CV 1:

**JMRI (Ex. AD at 1):**
<variable label="Primary Address" CV="1" comment="Short address"
        Item="Short Address" default="03">
  <shortAddressVAl/></variable>

**KAM (Ex. AE at 1):**
<CV INDEX="1">
<DEFAULT>3</DEFAULT>
<MIN>0</MIN>
<MAX>255<?MAX>
<NAME>Primary Address<?NAME>
<BITS BITS _DEFINED="NO" ?>
<BIT DEFINITION>
        <BIT_0 />
        <BIT_1 />
        <BIT_2/>
        <BIT_3/>
        <BIT_4/>
        <BIT_5/>
        <BIT_6/>
        <BIT_7/>
</BIT_DEFINITION>
<DATE_MODIFIED />
<BitMask />
<stringList />
< /CV>

This comparison provides a good example of the substance of Plaintiff's copyright claim. There are similar words in the two files and KAM concedes that this similar information was copied from the JMRI files, however, upon inspection it is clear that the copied information is not copyrightable because it is not original to JMRI.  The first similarity is the use of the term "CV."  CV is short for "configuration variable" which is a term universally used in the industry to describe these particular functions.  The term "configuration variable" and its abbreviation are

terms coined and used by the NMRA.  Katzer Decl., ¶ 35, Ex. 1.  Therefore, Plaintiff does not have a copyright to the term "configuration variable" or the abbreviation "CV."

The second similarity is the use of the number 1, as in CV 1.  It goes without saying that the number 1 is not copyrightable.  Nor can Plaintiff claim to have a copyright to the selection of the number one from this particular configuration variable.  The NMRA uniform standard *requires* that CV 1 is always the "primary address."  This is a mandatory standard.  Katzer Decl., ¶ 36, Ex. 1.

This leads to the third similarity which is the selection of the phrase "primary address" for CV 1.  The NMRA uses the exact language "primary address" as the industry standard for CV 1.  Katzer Decl., ¶ 36, Ex. 1.   Plaintiff has already conceded that the NMRA has chosen the term "primary address" for CV 1.  [Dkt.#237], Ex. M,  page 2.

The final similarity that appears on the face of the text is the selection of number 3 as the "default."  The default refers to the default value for this particular configuration variable.  Katzer Decl. ¶ 38.  A default value is supplied by the manufacturer in the decoder manual or by the NMRA.  Katzer Decl. ¶ 39.   That is the case with this particular default value of "3."  In this case, the default value of "3" comes from the NMRA configuration variable table.  Katzer Decl. ¶ 40, Ex. 1.  The same is true from the CV default values described later in the QSI Electric file, where the default values typically come from the QSI manual.  So, for example, CV 53.10.1 in the Decoder Definition Text file has a default value of "64."  [Dkt.#237], Ex. AD, page 11.  This default value comes from the QSI manual.  Katzer Decl. ¶ 41, Ex. 2.

Nor does Plaintiff have a claim to the selection and arrangement of the QSI Electric Decoder Definition File as a whole.  First, as for the selection and arrangement of the CVs themselves, the KAM and JMRI files are not similar.  While both files use the same number of CVs, the CVs are in numerical order in the KAM file and are not in numerical order in the JMRI file.  *Cf.* [Dkt.# 237], Ex. AD, AE.  Additionally, JMRI CV numbering includes decimals where KAM's does not.  For example, CV 53.10.0 in the JMRI files controls "Outout10-

Forward/Reverse Only." [Dkt.#237], Ex. AD, page 10.   This is identified only as CV 53 in the KAM file.  [Dkt.#237], Ex. AE,  page 29.

QSI Electric CV 53.10.0 "Outout 10-Forward/Reverse Only" also provides a good comparison of the selection and arrangement of the "feature choices" which appear in some CVs and to which Plaintiff also claims a copyright.  Katzer Decl., Ex. 3 (Deposition of Bob Jacobsen), pages 22-28, 71.   These feature choices are feature selections available within each CV. For example, for CV 53.10.0 in the JMRI files there are numerous feature choices starting with "Dynamic Brakes" and ending with "Squealing Brakes + Air Brakes."  [Dkt.#237], Ex. AD, page 10.  KAM's file incorporates these feature choices verbatim.  [Dkt.#237], Ex. AE, page 14. Plaintiff has stated in his previous declarations and in his deposition that this selection and arrangement of feature selections is part of Plaintiff's copyrighted material.  [Dkt.# 237] at ¶¶ 71-72; Katzer Decl., Ex 3, page 27, 28, 71.  However, neither the feature choices themselves, nor the selection and arrangement of these feature choices are original to Plaintiff.  Rather, these feature choices, as well as the order they are presented in, comes straight from the QSI Manual. *See* Katzer Decl., Ex. 2, 4.  QSI is the manufacturer of this particular decoder.  Katzer Decl., ¶¶ 31-33, 45.  Therefore, Plaintiff cannot claim that these feature choices are his original work.

What is left at the end of the day are very minor changes scattered throughout the text files made by Plaintiff and copied by Defendants that do not meet the test for minimum creativity described in the *Feist* case above.  This is best illustrated using Plaintiff's own best example of his allegedly copyrighted work surrounding the selection and arrangement of the CV variable names in the Decoder Definition Text Files. In his previous declarations in support of his motion for a preliminary injunction, Plaintiff alleges that his selection and arrangement (and possibly the words themselves, it is not clear) surrounding the variable names for CV 1 through 5 contains "creative expression."  [Dkt.#237], ¶ 18-25, Ex. M.  This includes "Primary Address" for CV 1; "Start Volts" for CV 2; "Accel" for CV 3, "Decel" for CV 4; and "Vhigh" for CV 5.  *Id.*  Upon

inspection however, neither these words themselves nor the selection of these particular variable names exhibit the minimum level of creativity required for copyrightability.

First, the words themselves do not display the minimum quantum of creativity for copyright protection. Courts and the Copyright Office refuse to protect short phrases of one to two words. Nimmer on Copyright, § 2.01[B], 2-17*; see also Cook v. Robbins*, 232 F.3d 736 (9th Cir. 2001). Even short phrases of more than two words are not protected unless they display an extreme amount of creativity. *See Heim v. Universal Pictures Corp., Inc.*, 154 F.2d 480, n.8 (2nd Cir. 1946) (suggesting that the first line of Lewis Carroll's poem *Jabberwocky* would meet this test of creativity: "'Twas brillig and the slithy toves"). Clearly, neither the words "Accel" or "Decel" nor the phrase "Start Volts" meets this quantum of creativity.

Nor does the selection of these terms merit copyright protection. The choice of these words does not meet the test for the minimum level of creativity laid out in *Matthew Bender, supra*. First, and as Plaintiff concedes, the variable names for CV 1 and CV 5 come directly from the NMRA manual and are therefore not Plaintiff's original work.

Regarding CVs 2, 3 and 4, abbreviating "Start Voltage," "Acceleration Rate" and "Deceleration Rate" to "Start Volts," "Accel," and "Decel" respectively is a garden variety and obvious choice. There are few options available for selection and the chosen abbreviation seems the most obvious. Indeed, numerous manufacturers also use these abbreviations. Katzer Decl., ¶ 46, Ex. 5. Therefore, the vestigial work contained in KAM's files from the JMRI Decoder Definition Text Files does not meet the minimum requirements of creativity required for copyright protection. Since Plaintiff's material in KAM's text files is not copyrightable, summary judgment should be granted for Defendants on Plaintiff's copyright claim.

## C. PLAINTIFF CANNOT BRING A DMCA CLAIM AS A MATTER OF LAW

By the same logic, summary judgment should also be granted for Defendants on Plaintiff's DMCA claim (Count 5 of the Complaint), alleging a violation of 17 U.S.C. § 1202. If Plaintiff's work is not copyrightable, it follows, *a priori*, that Plaintiff may not maintain a §

1202 claim against Defendants since this claim requires that Defendants intentionally or knowingly induced, enabled, facilitated, or concealed copyright infringement.  17 U.S.C. § 1202(a), (b).  If Plaintiff's work is not copyrightable, Defendants could not have infringed or abetted the infringement of this work (either intentionally or knowingly).

### III.  PLAINTIFF IS NOT ENTITLED TO ANY DAMAGES AS A MATTER OF LAW UNDER THE COPYRIGHT ACT

Should this Court decide that summary judgment is not appropriate as to whether Defendants have infringed Plaintiff has copyrighted original works, Defendants move this Court, in the alternative, to enter summary judgment on Plaintiff's Copyright claim (Count 4) because Plaintiff has no legal entitlement to actual damages, statutory damages or attorney fees under the Copyright Act.  Summary judgment is appropriate for this entire claim if this Court finds that Plaintiff is not entitled to monetary damages since (1) Plaintiff does not seek declaratory relief and (2) since Plaintiff is also not entitled to injunctive relief on this claim because this Court has already found that Plaintiff has put forth no evidence of harm irreparable or otherwise. [Dkt.# 284] at page 14, n.3; *see also eBay v. MercExchange*, 547 U.S. 388 (2006) (requiring a showing of irreparable harm to secure a permanent injunction).  Therefore, there is no genuine issue of material fact that Plaintiff has suffered no harm.

### A.  *ADDITIONAL RELEVANT FACTS RELATING TO DAMAGES*

Plaintiff seeks statutory damages and attorney fees under Sections 504 and 505 of the Copyright Act for all versions of the Decoder Definition Text Files.  *See* Complaint [Dkt.#191], ¶¶ 473, 475, Prayer for Relief L and T.  On September 2, 2008, Defendants filed a Fed. R. Civ. P. 12 (f) motion to strike Plaintiff's request for statutory damages and attorney fees for copyright infringement under 17 U.S.C. §§ 504, 505. *See* [Dkts # 192, 230, and 258].  This motion was based on the fact that, in the complaint Plaintiff admits that the alleged instance of infringement occurred prior to copyright registration.  *See, e.g.* Complaint at ¶¶ 309, 310.  Therefore, pursuant

to 17 U.S.C. § 412, Plaintiff is not entitled to statutory damages or attorney fees for alleged acts of infringement that commenced prior to copyright registration.

On January 5, 2009 this Court issued an Order denying Defendants motion to strike this requested relief stating that "[a]lthough the allegations in the complaint as to the timing of infringement constitute a compelling statement of the dates of the alleged infringement, the Court finds that, by virtue of discovery, Jacobsen may find additional instances of infringement and therefore, Defendants' motion to strike is premature." [Dkt.#284] at 11.

Discovery is now complete and is undisputable that the allegedly infringing activities commenced prior to copyright registration. Jacobsen first registered a copyright to the Decoder Definition Text Files on June 13, 2006. Complaint ¶ 317. This first registration covered version 1.7.1 of the Decoder Definition Text Files. *Id.; see also* [Dkt.#240] Appendix A. Defendants first downloaded the Decoder Definition Text Files on May 30, 2004. Katzer Decl. ¶ 11. The Decoder Definition Text Files associated with this download were contained in Version 1.4 of Decoder Pro. Katzer Decl., ¶ 12. Defendants first distributed elements of the Decoder Definition Text files in July 2005 with their Decoder Commander product. Katzer Decl. ¶ 17. This version of Decoder Commander contained elements of versions 1.6.1 and 1.7.1 of the Decoder Definition Text Files. Katzer Decl. ¶ 18. Subsequently, Defendants distributed portions of version 1.6.1, 1.7.1 and 1.7.3 of the Decoder Definition Text Files, beginning on March 17, 2006. Katzer Decl., ¶ 19. Defendants removed all elements of the Decoder Definition Text Files with the release of version 307 of Decoder Commander on October 31, 2006. Katzer Decl., ¶ 21. Defendants did not modify or distribute any versions of JMRI software other than Versions 1.6.1, 1.7.1 and 1.7.3. Katzer Decl. ¶ 20. Defendants stopped production and distribution of Decoder Commander entirely on August 15, 2008. Katzer Decl., ¶ 22. Jacobsen has conceded in deposition that Defendants' allegedly infringing activities commenced before June 13, 2006, the date of his first copyright registration. Katzer Decl. Ex 3, pages 66-68. Summary judgment is therefore appropriate on this requested relief since there is

no genuine issue of material fact that Defendants allegedly infringing activities commenced prior to Plaintiff's copyright registration.

### B.   STATUTORY DAMAGES AND ATTORNEY FEES

Jacobsen alleges that he is entitled to an award of statutory damages under 17 U.S.C. § 504 and attorney fees under 17 U.S.C. § 505.  Complaint [Dkt.#191], ¶¶ 473, 475, Prayer for Relief L and T.  Under Section 504(c)(1), this Court, in its discretion, may award statutory damages in a sum between $750 and $30,000 per infringement and pursuant to Section 505 this Court may award "the recovery of full costs by or against any party [and] the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."

However, Section 412 of the Copyright Act prohibits the award of statutory damages and attorney fees under Sections 504 and 505 unless the Plaintiff registers its copyright prior to the infringement.  Indeed, Section 412 is plainly entitled "Registration as prerequisite to certain remedies for infringement" and provides that:

> "[…] [N]o award of statutory damages or of attorney's fees, as provided by sections 504 and 505 [17 U.S.C.§§ 504, 505] shall be made for-
> (1) …
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after first publication of the work."

"Commencement" of the infringement means "the time when the first act of infringement in a series of ongoing discrete infringements occurs."  *Johnson v. Jones*, 149 F.3d 494, 506 (6th Cir. 1998).  Courts consistently bar recovery unless the plaintiff can show that the registration predated the infringement.  *See Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 850 (11th Cir. 1990); *Evans Newton, Inc. v. Chicago Sys. Software*, 793 F.2d 889, 896 (7th Cir. 1986).  Thus, Jacobsen bears the burden of demonstrating that he complied with the prerequisite of Section 412.

Here it is undeniable that Jacobsen's registration did not predate commencement of the alleged infringement.  Rather, the alleged infringing activity commenced over a year prior to registration.  The initial allegedly infringing act occurred when KAM first distributed the allegedly infringing Decoder Commander CD with portions of Plaintiff's Decoder Definition Text Files in July 2005.  Katzer Decl. ¶ 17.  Plaintiff agrees with this.  *See* Complaint, ¶¶ 271, 292-306, 309, 310, 317 (*e.g.* ¶ 309:  "Defendant Katzer distributed 10 copies of Decoder Commander on July 6, 2005;" ¶ 310:  "Between July 2005 and June 2006, Defendants copied and distributed at least 300 copies of their infringing products.").  Jacobsen first published his Decoder Definition Text files in 2002 and his copyright registration became effective on June 13, 2006.  Complaint ¶ 248, 317; Exhibit C, I.

The Ninth Circuit has specifically held that § 412 prohibits an award of statutory damages and attorney fees for post-registration infringements when the initial act of infringement occurred prior to the effective copyright registration date.  *Derek Andrew, Inc. v. Poof Apparel Corporation,* 528 F.3d 696, 700 (9th Cir. 2008). In *Poof Apparel,* the Ninth Circuit interpreted the term "commenced" as used in § 412 to resolve this issue, concluding that the word "commenced" refers to a series of acts and not a single act.  *Id.*  The Ninth Circuit then went on to describe the fundamental purposes of § 412, which were to (1) provide copyright owners an incentive to register their copyrights promptly and (2) to encourage potential infringers to check the Copyright Office's database.  *Id.*  The Court then concluded that "[t]o allow statutory damages and attorneys' fees where an infringing act occurs before registration and then reoccurs thereafter clearly would defeat the dual incentives of § 412."  *Id.*  Accordingly, the Ninth Circuit held that the first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412.  *Id.* at 701.

Jacobsen has previously argued, in his response to Defendants prior motion to dismiss this requested relief under FRCP 12, that two versions of the Decoder Definition Text Files were registered within three months of their release (versions 1.7.7 and 1.8, Complaint ¶¶ 336, 337,

Ex. K, L; see also [Dkt.#240] Ex. A). If registration is made "within three months after first publication of the work" then an exception exists to the bar against recovery of statutory damages and attorney fees. 17 U.S.C. § 412(2). This argument assumes each version of the Decoder Definition Text Files is a new and separate work with a first publication date at the time of release of each version.

First and most fundamentally, Defendants never incorporated versions 1.7.7 or 1.8 into their software. Katzer Decl. ¶ 20. Therefore, Defendants could never have infringed these versions. Second, the unambiguous text of the Copyright Act forecloses this interpretation of Section 412. The Copyright Act unambiguously states that "all the parts of a compilation or derivative work constitute one work." 17 U.S.C. § 504(c)(1). The JMRI Decoder Definition Text File versions are derivative works. This fact is evidenced by the copyright registrations filed for the Decoder Definition Text Files themselves. In the copyright registration for version 1.8, when asked, in a section entitled "Derivative Work or Compilation," to identify any preexisting work or works that this work is based on or incorporates, Jacobsen lists all previous versions of the Decoder Definition Text files. Complaint, Ex L. When asked whether registration of an earlier version of this work had already been made to the Copyright Office, Jacobsen responds "yes" and cites to the registration number for version 1.6 (which cites to the registration number for version 1.0 in its registration, which cites to the registration number of version .9). *Id.*

Jacobsen's post-lawsuit copyright registration of every version of the JMRI Decoder Definition Text files are not *bona fide* registrations of separate works, but rather were made for the sole purpose of attempting to collect and aggregate his statutory damages and collect attorney fees for allegedly "new and separate" works. Merely registering a new version does not make it a new work. *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990) (citing the House Report on the 1976 Copyright Act stating "[m]oreover, although the minimum and maximum

amounts are to be multiplied where multiple 'works' are involved in the suit, the same is *not true with respect to multiple copyrights...or multiple registrations*.") (emphasis in court opinion).

Since no genuine issue of material fact exists that the allegedly infringing act occurred prior to the effective copyright registration date of the Decoder Definition Text Files, summary judgment should be granted for Defendants on the issue of statutory damages and attorney fees for copyright liability.

### C.  ACTUAL DAMAGES

If Plaintiff is not entitled to statutory damages, Plaintiff seeks, in the alternative, actual damages and disgorgement of Defendants' profits for all versions of the Decoder Definition Text Files.  Complaint, Prayer for Relief M and N.  U.S.C § 504(b) of the Copyright Act provides the sole means to obtain monetary remedies for a copyright Plaintiff like Jacobsen, who fails to register his copyright prior to the alleged infringement.

> The copyright owner is entitled to recover the *actual damages* suffered by him or her as a result of the infringement, and *any profits of the infringer that are attributable to the infringement* and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b) (emphasis added).  Compensatory damages are thus available to recover (1) actual damages and (2) any profits of Defendants attributable to the infringement.  *See also Miller v. Universal City Studios, Inc.*, 650 F.2d 1365 (5th Cir. 1981).

### 1.  KAM's profits

The award of the infringer's profits requires disgorgement of any profit to ensure that the infringer has not benefited from his wrongdoing.  *On Davis v. The Gap,* 246 F.3d 152, 159 (2nd Cir. 2001).  The Copyright Act itself quantifies this award as the infringer's gross revenue minus deductible expenses and profits unrelated to the infringement.  17 U.S.C. § 504(b).  KAM's gross

revenue for sales of Decoder Commander is $1335.82, representing sales of 29 units.  Katzer Decl. ¶¶ 5, 6.  KAM's deductible expenses relating to sales of Decoder Commander are $41,804.45.  Katzer Decl. ¶ 7. This represents $37,892 in engineering costs, $3,839 in marketing costs, and $73.95 in packaging costs.  Katzer Decl., ¶ 8.  KAM has made no profit on sales of Decoder Commander, but rather has lost $40,468.63 on the product.  Therefore, there is no profit to disgorge as a matter of law and Defendants are entitled to summary judgment on the issue of damages relating to defendants' profits.

**2.     Plaintiff's Actual Damages**

This award of actual damages looks at the facts from the point of view of the copyright owner as it undertakes to compensate the owner for any harm he suffered by reason of the infringer's illegal act.  *See generally Fitzgerald Publ'g Co. v. Baylor Publ'g Co*., 807 F.2d 1110, 1118 (2nd Cir. 1986); *Walker v. Forbes, Inc.,* 28 F.3d 409, 412 (4th Cir. 1994).  The Ninth Circuit has defined the phrase "actual damages" as "the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement."  *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002) (quoting *Frank Music Corp. v. Metro Goldwyn-Mayer,* 772 F.2d 505, 512 (9th Cir. 1985)).  To determine the work's "market value" at the time of the infringement, the Ninth Circuit has endorsed a hypothetical approach which asks "what a willing buyer would have been reasonably required to pay to a willing seller for [the owner's] work."  *Id.; see also Polar Bear Productions, Inc. v. Timex Corp*., 384 F.3d 700, 708 (9th Cir. 2004).  This is an objective approach, and "hurt feelings" has no place in this calculus.  *Mackie v. Rieser,* 296 F.3d at 917.

Here, it is undisputed that Plaintiff's Decoder Definition Files are, and always have been, available for free for download on sourceforge.net. Katzer Decl. ¶ 15.  Therefore, under the current law in this Circuit, the Decoder Definition Files have no market value.  Since the Decoder Definition Files have no market value, Plaintiff has not suffered any actual damages.

Additionally, no value has been conferred on Defendants as they have never profited, at all, from the 29 sales of Decoder Commander.

Summary judgment, therefore, should be granted in favor of Defendants on Plaintiff's copyright claim since Plaintiff cannot prove, as a matter of law, that he suffered any compensable damages and no genuine issue of material fact exists regarding the damage calculation. Since Plaintiff does not seek declaratory relief and since there is no genuine issue of material fact that Plaintiff has not suffered any harm for purposes of injunctive relief, summary judgment is appropriate for both the damage and liability component of the copyright claim.

## CONCLUSION

Based on the above, Defendants respectfully request that this Court grant partial summary judgment in favor of Defendants on Plaintiff's copyright infringement claim (Count 4) and on Plaintiff's DMCA claim (Count 5) and the associated relief requested because Defendants did not infringe Plaintiff's original works as a matter of law. Alternatively, summary judgment should be granted for Defendants on Plaintiff's copyright infringement claim and the associated relief requested because Plaintiff is not entitled to any damages as a matter of law.

Dated October 30, 2009.

Respectfully submitted,

      /s/Scott Jerger
R. Scott Jerger (*pro hac vice*)
Field Jerger LLP
621 SW Morrison, Suite 1225
Portland, OR 97205
Tel: (503) 228-9115
Fax: (503) 225-0276
Email: scott@fieldjerger.com

**CERTIFICATE OF SERVICE**

I certify that on October 30, 2009, I served Matthew Katzer's and KAM's MOTION FOR SUMMARY JUDGMENT on the following parties through their attorneys via the Court's ECF filing system:

Victoria K. Hall
Attorney for Robert Jacobsen
Law Office of Victoria K. Hall
3 Bethesda Metro Suite 700
Bethesda, MD 20814

David McGowan
Warren Hall
5998 Alcala Park
San Diego, CA 92110

_____/s/ Scott Jerger_____
R. Scott Jerger (*pro hac vice*)
Field Jerger LLP