IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERT JACOBSEN,

    Plaintiff,

v.

MATTHEW KATZER and KAMIND ASSOCIATES, INC.,

    Defendants.

No. C 06-01905 JSW

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Now before the Court is the motion for summary judgment filed by Plaintiff Robert Jacobsen and the motion for partial summary judgment filed by Defendants Matthew Katzer and Kamind Associates, Inc. Having considered the parties' pleadings, the relevant legal authority, and having had the benefit of oral argument, the Court hereby GRANTS IN PART AND DENIES IN PART Plaintiff's motion for summary judgment and DENIES Defendants' motion for partial summary judgment.

**BACKGROUND**

Matthew Katzer is the chief executive officer and chairman of the board of directors of Kamind Associates, Inc., a software company based in Portland, Oregon that develops software for model railroad enthusiasts. The Java Model Railroad Interface ("JMRI") Project is an on-line, open source community that also develops model train software. Plaintiff, Robert Jacobsen, works for the Lawrence Berkeley National Laboratory and is a professor of physics at

the university, as well as a model train hobbyist and a leading member of the JMRI Project.

Defendants move for partial summary judgment on Plaintiff's claim for copyright infringement and his claim for violation of the Digital Millennium Copyright Act and on all associated relief sought for these claims. Defendants do not challenge the cybersquatting claim.

Plaintiff also moves for summary judgment on his copyright infringement and cybersquatting claims, as well as moving for judgment on three affirmative defenses to Defendants' counterclaim for copyright infringement.

The Court will address additional specific facts as required in the analysis.

## ANALYSIS

### A. Legal Standards Applicable to Motions for Summary Judgment.

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* Inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991).

Actions arising under the Copyright Act must adhere to the same summary judgment standard as any other civil action. *Shaw v. Lindheim*, 919 F.2d 1353, 1358-59 (9th Cir. 1990). Accordingly, copyright claims can be resolved on summary judgment where there is no dispute of material fact. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1472 (9th Cir. 1929). In particular, "[c]opyrightability is often resolved on summary judgment ... because very often no issues of material fact are in dispute and the only task for the court is to analyze the allegedly

copyrightable item in light of applicable copyright law." *Sem-Torq, Inc. v. K Mart Corp.*, 936 F.2d 851, 853 (6th Cir. 1991) (citations omitted).

**B.      Copyright Originality.**

The Constitution gives Congress the power "[t]o promote the Progress of Science ... by securing for limited Times to Authors ... the exclusive Right to their ... Writings." U.S. Const. Art. 1, § 8, cl. 8. Accordingly, Congress has granted copyright protection to "original works of authorship," 17 U.S.C. § 102(a), as well as to "compilations." 17 U.S.C. § 103(a). The copyright compilation "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work...." 17 U.S.C. § 103(b).

Discoverable facts, like ideas, are not copyrightable. *CDN Inc. v. Kapes*, 197 F.3d 1256, 1259 (9th Cir. 1999). But compilations of facts are copyrightable even when the underlying facts are not. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344 (1991). "Subject matter created by and original to the author merits copyright protection. Items not original to the author, *i.e.*, not the product of his creativity, are facts and not copyrightable." *CDN*, 197 F.3d at 1259. In order to warrant protection, compilations must contain a minimal amount of originality or creativity. *Feist*, 499 U.S. at 361. The requirement of originality, a prerequisite to any valid copyright, is "not particularly rigorous. Simply stated, original means not copied, and exhibiting a minimal amount of creativity." *Key Publications, Inc. v. Chinatown Today Publishing Enterprises, Inc.*, 945 F.2d 509, 512-13 (2d Cir. 1991) (citing 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*, § 2.01 (1991)). The "requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily , as they possess some creative spark, 'no matter how crude, humble or obvious' is might be." *Feist*, 499 U.S. at 345 (quoting 1 M. Nimmer & D. Nimmer, *Copyright* § 1.08[C][1] (1990)).

For compilations, "the originality requirement is not particularly stringent. A compiler may settle upon a selection or arrangement that others have used; novelty is not required. Originality requires only that the author make the selection or arrangement independently (*i.e.,* without copying that selection or arrangement from another work), and that it display some

3

minimal level of creativity. Presumably, the vast majority of compilations will pass this test, but not all will. There remains a narrow category of works in which the creative spark is utterly lacking or so trivial as to be nonexistent." *Id.* at 358-59.

In *Feist*, the Court found that the white page listings of telephone numbers in alphabetical order did not qualify for copyright protection as a compilation because it was found to be completely devoid of originality. *Id.* at 361. In *Key Publications*, however, the court found sufficient creativity to warrant copyright protection because the author of the yellow pages had excluded from the directory those businesses she did not think would remain open for very long. 945 F.2d at 513. Factual compilations which manifest choices as to selection and arrangement, made independently by the compiler and entailing a minimal degree of creativity, are "sufficiently original that Congress may protect such compilations through the copyright laws." *Feist*, 499 U.S. at 1289 (citations omitted). "Thus, even a directory that contains absolutely no protectible written expression, only facts, meets the constitutional minimum for copyright protection if it features an original selection or arrangement." *See id.* (citing *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 547 (1985)).

The court in *CDN* found that the author's estimates for the fair value of coins, which were then compiled into a price list, were sufficiently creative to warrant copyright protection. 197 F.3d at 1260. In *CCC Information Services, Inc. v. Maclean Hunter Market Reports*, the Second Circuit found that the compilation of editors' projections for the value of different kinds of used cars were not preexisting facts, but rather represented predictions by the editors of future prices, based on a multitude of data sources as well as professional judgment and expertise. 44 F.3d 61, 67 (2d Cir. 1994). Just as in *CDN*, because the compilation of data included the judgment and expertise of the authors in estimating value, the court found the requisite modicum of creativity sufficient to award the compilation copyright protection.

In sum, copyright protections may be afforded compilations if there is a minimum level of creativity, either in the production of the data compiled or in the selection and arrangement of available, and otherwise noncopyrightable, data.

4

**C. Defendants' Motion for Summary Judgment.**

**1. Plaintiff's Work is Copyrightable.**

Defendants move for summary judgment on Plaintiff's claim for copyright infringement on the basis that the work which they admitted copying was not itself original to Plaintiff and therefore was not copyrightable. Also, Defendants argue that their mere literal copying of the Decoder Definition Text Files from the JMRI website does not constitute copyright infringement because the act of copying does not exceed the scope of the artistic license granted to users. The only pertinent license restrictions relate to the modification and distribution of the Decoder Definition Text Files. Because Defendants do not believe that Plaintiff's copyrighted works actually distributed by Defendants contain the requisite originality, Defendants maintain that their wholesale copying followed by modification and distribution, without attribution, cannot constitute copyright infringement.

However, there is undisputed evidence in the record indicating that Plaintiffs and the other members of the JMRI group invested a sufficient amount of creativity in the selection, ordering and arrangement of the data collected in the subject copied files. *See, e.g.,* Declaration of Howard Penny in support of opposition, ¶¶ 1-11; Declaration of Robert Jacobsen in support of opposition, ¶¶ 1, 6-11, 15-20, 29-32; Declaration of Victoria K. Hall in support of opposition, Ex. D (Penny deposition) at 143:13-146:7; Declaration of Robin Becker in support of Plaintiff's motion, ¶ 2, 5-7; Declaration of Jack Shall in support of Plaintiff's motion, ¶¶ 1-3, 11-14.) The Court finds these selections and choices about arrangement reflect the minimal amount of creativity required to satisfy the low threshold for demonstrating originality. *See, e.g., Key Publications*, 945 F.2d at 513. Accordingly, Defendants' motion for summary judgment on this basis is denied.[1]

---

[1] In addition, Defendants move for summary judgment on Plaintiff's Digital Millennium Copyright Act ("DMCA") claim on the sole basis that there is no underlying copyright infringement. As the Court has determined that there may be a copyright claim, Defendants' motion for summary judgment of the DMCA claim is unavailing and is, accordingly, denied.

5

### 2. Copyright Damages Are Available to Plaintiff.

In the alternative, Defendants argue that Plaintiff's copyright claim should be dismissed because Plaintiff has not suffered any actual damages and is not entitled to statutory damages as a matter of law. Plaintiff concedes that he is not entitled to and does not seek statutory damages or attorneys' fees under the Copyright Act. Defendants concede that Plaintiff has created a dispute of fact regarding the issue of irreparable harm by submission of Plaintiff's declaration submitted in opposition to the pending motion. Therefore, the only issue remaining is whether there is a any contested issue regarding whether Plaintiff has suffered any monetary damages under the Copyright Act.

Under the Copyright Act, a copyright owner is entitled to recover compensatory damages in the amount of actual damages suffered or the disgorgement of profits by the infringer attributable to the infringement. *See* 17 U.S.C. § 504(b). Although it is undisputed that Plaintiff distributed the copied work on the Internet at no cost, there is also evidence in the record attributing a monetary value for the actual work performed by the contributors to the JMRI project. (*See* Declaration of Victoria K. Hall in support of opposition, Ex. F (expert report of Michael A. Einhorn).)[2] Because there are facts in the record which may establish a monetary damages figure, the Court finds Plaintiff has made a showing sufficient to establish the existence of a dispute of fact regarding the monetary value of Plaintiff's work for purposes of his copyright claim. Accordingly, Defendants' motion for summary judgment on this basis is denied.

### D. Plaintiff's Motion for Summary Judgment.

### 1. Cybersquatting Claim.

The Anticybersquatting Consumer Protection Act, an amendment to the Lanham Act, prohibits cyberquatting. Cybersquatting "occurs when a person other than the trademark holder

---

[2] Although Defendants object to the admission of this expert report because it is unsworn, the Court finds the later submission of Mr. Einhorn's sworn declaration sufficient to overcome the objection. To the extent Defendants wish to move to strike the expert report, such a motion is not pending before this Court at this time. Regardless, the Court may assume at this procedural stage that there is some value for the expenditure of time invested in the JMRI Project and that it therefore has some monetary value.

6

registers the domain name of a well known trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *Bosley Medical Institute, Inc. v. Bosley Medical Group*, 403 F.3d 672, 680 (9th Cir. 2005) (quoting *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 204 (6th Cir. 2004)). The provision states that "[a] person shall be liable in a civil action by the owner of the mark ... if, without regard to the goods or services of the person, that person (i) has a bad faith intent to profit from that mark ...; and (ii) registers, traffics in, or uses domain name [that is confusingly similar to another's mark or dilutes another's famous mark]." 15 U.S.C. § 1125(d)(1)(A). A trademark owner trying to assert a claim for cybersquatting must establish "(1) it has a valid trademark entitled to protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit." *Bosley*, 403 F.3d at 681.

There is no dispute that Plaintiff has registered and owns the "DecoderPro" mark. (*See* Declaration of Robert Jacobsen in support of motion, ¶ 1, Ex. A.) The only remaining contention between the parties here is whether there is a factual dispute as to the bad faith intent to profit element of Plaintiff's cybersquatting claim. The Court may consider various non-exclusive factors in determining whether the domain name holder acted in bad faith. *See Sporty's Farm LLC v. Sportsman's Market, Inc.*, 202 F.3d 489, 498 (2d Cir. 2000). These factors include, for instance, the person's prior use of the domain name in connection with the bona fide offering of any goods or services, the person's intent to divert consumers from the mark owner's online location, and the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in an bona fide offering of goods or services. *Id.* at 498 n.12.

Here, the undisputed facts establish that when he registered the name "decoderpro.com," Katzer knew the mark referred to the product created by JMRI. (Declaration of Victoria K. Hall

7

in support of motion, Ex. H at 3.) It is also undisputed that Katzer warehoused the mark without using it and, in settling with a third party over a domain name dispute, tried to ensure that JMRI would not end up with the name. (*Id.*, Ex. H at 7; Ex. J.) These undisputed facts are sufficient to establish the element of bad faith intent to profit. Defendants contention that, after their registration of the domain name, other people similarly registered marks in retaliation or to further their own business objective, is simply irrelevant and not currently before the Court. Accordingly, the Court GRANTS Plaintiff's motion for summary judgment as to the cybersquatting claim.

### 2.   **Copyright Infringement Claim.**

To prevail on his claim for copyright infringement, Plaintiff must show he owns a valid copyright and that Defendants reproduced protected elements of the copyrighted work. *See Feist*, 499 U.S. at 361. The uncontroverted evidence establishes that Plaintiff is the owner of the decoder definition files which are the subject of the copyright infringement claim. (Declaration of Robert Jacobsen in support of motion, Ex. B.) The evidence summarized by this Court with reference to Defendants' motion establishes the originality, and therefore, the copyrightability, of the subject work. Again, the Court is unpersuaded that Plaintiff cannot prove damages. For the same reasons discussed *supra*, the copied files remain in the Defendants' product as distributed and therefore constitute a basis for a claim for copyright infringement. Accordingly, the Court GRANTS Plaintiff's motion for summary judgment on his copyright cause of action as to liability, but not as to damages.

### 3.   **Plaintiff's Affirmative Defenses.**

In November 2006, Defendant Matthew Katzer bought the rights to a reference manual produced by QS Industries, Inc. ("QSI"), a model train decoder chip maker. (Counterclaim at ¶ 14.) JMRI programmers, subject to a grant of an oral license to do so, included data from the reference manual in the JMRI files for QSI decoder chips. In February 2009, Defendants counterclaimed alleging copyright infringement against Plaintiff in the amount of $6 million for use of the data in the reference manual. (*Id.* at ¶¶ 16-26.)

Plaintiff argues that the undisputed facts demonstrate that the JMRI programmers had permission to reproduce and distribute the QSI material. Plaintiff contends that any limitation to the license, perhaps expressed in this litigation by QSI, was never communicated to Plaintiff or any of the programmers at JMRI. At oral argument, Defendants conceded that there is no evidence in the record that any limitation on the scope of the oral license granted by QSI was actually communicated to anyone at JMRI. Instead, Defendants contend that the permission could not have extended to the wholesale, literal incorporation of QSI's descriptive phrases. Defendants contend that the scope of the license had to be limited in some manner, even if not actually communicated to Plaintiff. This argument is not actually supported by the facts in the record or by citation to persuasive legal authority.

Second, Plaintiff contends that, even if QSI had not licensed the disputed work, the JMRI programmers' use of the QSI material was fair. Plaintiff argues that the use was not for commercial purposes but more akin to non-profit educational use as the JMRI programmers transformed the data into "the foundation for an interactive computer program conferring substantial benefits on model railroaders" without cost. (Motion at 16.) The nature of the work also favors Plaintiff, as the relevant work is portions of a reference manual which were integrated the JMRI project in order help model railroaders program QSI chips, a benefit both to Plaintiff and to QSI. (Declaration of Victoria K. Hall, Ex. F (deposition of Gerry Pruss) at 45:15-46:23, Ex. G (deposition of Fred Severson) at 62:1-15, 168:1-7.) The amount of substantiality of the portion used favors Plaintiff as the relative amount of data actually used is minimal. (*Id*. at ¶ 11, Ex. K.)

Lastly, Plaintiff argues that Defendants' counterclaim is barred by the doctrine of laches. Laches is an equitable defense that precludes liability for a plaintiff who "with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950 (9th Cir. 2001) (citation omitted). Plaintiff must establish both that Defendants unreasonably delayed bringing suit and that the delay caused Plaintiff to suffer prejudice. *See Couveau v. American Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000).

The undisputed facts establish that Defendants bought the rights to the QSI reference manuals in November 2006 and waited 27 months to file their counterclaim. The record also conclusively establishes that no one informed Plaintiff of the assignment of rights, nor did they object to his continued use of the data. There is no evidence that QSI has ever requested that Plaintiff or the JMRI project cease using its materials. Plaintiff states that had QSI objected to the use of the QSI material, his project would have ceased to use it, thereby not incurring any damages. (Declaration of Robert Jacobsen at ¶ 52, Declaration of Victoria K. Hall, Ex. D (deposition of Michael Mosher) at 65:11-19, Ex. E (deposition of Howard G. Penny) at 128:12-14.) Based on these uncontested facts, the Court finds that Defendants' conduct amounts to a litigation tactic barred by the equitable doctrine of laches. Accordingly, the Court GRANTS Plaintiff's motion for summary judgment as to Defendants' counterclaim for infringement.

### 4. Digital Millennium Copyright Act Claim.

Plaintiff alleges that the information contained in the JMRI Project Decoder Definition Files constituted "copyright management information" within the meaning of the Digital Millennium Copyright Act. Plaintiff further alleges that by removing the information and making copies of the files, Defendants violated 17 U.S.C. § 1202(b), which protects the integrity of copyright management information.

Under the statute, the term copyright management information ("CMI") means "any of the following information conveyed in connection with copies ... of a work ..., including digital form," including "the name of, and other identifying information about the author of the work, ... the copyright owner of the work, ... [and other] information identifying the work." 17 U.S.C. § 1202(c). In *IQ Group v. Wiesner Publishing, Inc.*, the court, at the summary judgment stage, determined after a lengthy review of the legislative history of the DMCA that the statute should be construed to protect CMI performed by the technological measures of automated systems. 409 F. Supp. 2d 587, 597 (D. N.J. 2006). In *McClatchey v. The Associated Press*, because the plaintiff had used a computer software program to print her title, name and copyright notice on copies of her photograph, the district court determined that this technological process came

within the term CMI as defined in section 1202(c). 2007 WL 776103, *5 (W.D. Pa. March 9, 2007).

The information Plaintiff contends consists of copyright management information in his complaint is the "author's name, a title, a reference to the license and where to find the license, a copyright notice, and the copyright owner." (Second Amended Complaint, ¶ 479.) Plaintiff also alleges that he used a software script to automate adding copyright notices and information regarding the license and uploaded the files on the Internet through SourceForge.net, an open source incubator website. (*Id.*, ¶¶ 267-68, 480.) Plaintiff contends that Defendants downloaded the files and removed the names of the authors and copyright holder, title, reference to license, where to find the license and the copyright notices, and instead, renamed the files and referred to their own copyright notice and named themselves as author and copyright owner. (*Id.*, ¶¶ 271-76; 289-291.)

Based on the allegations in the complaint, the Court finds that there has been some technological process employed to protect the author's name, a title, a reference to the license and where to find the license, a copyright notice, and the copyright owner of Plaintiff's work. Further, there is no dispute that Defendants employed a tool to translate the JMRI files to a format for their own use without copying this attribution information. Therefore, these elements of the DMCA claim are established in Plaintiff's favor. However, as Plaintiff concedes, there remain disputed and therefore triable issues of fact regarding Defendants' knowledge and intent. Accordingly, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for summary judgment as to the DMCA claim.

**E.  Scheduling.**

At the conclusion of the oral argument on these motions, counsel for both parties agreed that, upon receipt of the order resolving the motions, they would meet and confer and propose a mutually-agreed upon pretrial and trial schedule. The Court HEREBY VACATES the current pretrial and trial schedule and ORDERS the parties to meet and confer and to submit a joint proposal by no later than December 18, 2009. Considering the current posture of the case, the

11

parties' joint proposal shall also include a date by which the parties agree to proceed to a further settlement conference before Magistrate Judge LaPorte.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion for summary judgment and DENIES Defendants' motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated: December 10, 2009

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE